**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BYRON GLENN WILLIS, | ) | |
| individually and on behalf of the class | ) | |
| defined herein, | ) | |
| | ) | 08 C 3238 |
| Plaintiff, | ) | Judge Kendall |
| | ) | Magistrate Judge Mason |
| vs. | ) | |
| | ) | |
| ELITE RECOVERY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S PRELIMINARY MOTION FOR CLASS CERTIFICATION**

Plaintiff respectfully requests that this Court enter an order determining that Count I of this Fair Debt Collection Practices Act ("FDCPA") action may proceed as a class action against defendant Elite Recovery Services, Inc. ("Elite").

As to Count I of the Complaint, plaintiff defines the class as (a) all natural persons with Illinois addresses (b) with respect to whom a lawsuit was filed with Elite Recovery Services, Inc. as plaintiff (c) attaching a "statement of account" in the form in Appendix 1, Exhibit C, (d) which document was not sent to the addressee prior to the filing of suit (e) where the lawsuit was filed or served during a period beginning on a date June 4, 2007 and ending June 24, 2008.

Plaintiff further requests that Edelman, Combs, Latturner & Goodwin, LLC be appointed counsel for the respective classes.

In support of this motion, plaintiff states:

I.    **NATURE OF THE CASE**

1.    Count I concerns the legality of a standard document (<u>Appendix 1</u>, <u>Exhibit C</u>) attached to collection complaints filed by defendant.

2.    For example, on or about April 4, 2008, Elite filed suit against plaintiff Byron Glenn Willis in the Circuit Court of Cook County to collect a purported credit card debt which was alleged to have been originally owed to Household/Orchard Bank.  The complaint in Case No. 08 M1 127418 is attached as <u>Appendix 1</u>.  It consisted of a one page complaint; a one page affidavit (<u>Exhibit A</u>); an unsigned, purported contract (<u>Exhibit B</u>); and a one page purported "statement of account" (<u>Exhibit C</u>).

3.    The alleged debt was incurred for personal, family or household purposes.

4.    The "statement of account" (<u>Appendix 1</u>, <u>Exhibit C</u>) was made to appear as if it had been sent to the putative debtor prior to suit, so as to give rise to an account stated.  It bore a date prior to the filing of suit, contained a direction to "Mail Payments To" a specified address, and contained a notice required by the Fair Debt Collection Practices Act on correspondence, but not pleadings.

5.    In fact, the "statement of account" (<u>Appendix 1</u>, <u>Exhibit C</u>) was not sent to Byron Glenn Willis prior to the filing of suit, but was only an exhibit to the complaint.

6.    The purpose and effect of the "statement of account" is to falsely represent that the document was sent to the putative debtor and not objected to.

7.    The "statement of account" is a document regularly attached by Elite Recovery Services, Inc. to collection complaints.  Other examples are attached as <u>Appendices 2-9</u>.

II.    **CLASS CERTIFICATION REQUIREMENTS**

8.    All requirements of Rule 23 of the Federal Rules of Civil Procedure have been met.

9.    The Class is so numerous that joinder of all members is impractical. Count I complains of a standard form document.  Defendant filed over 1,000 cases in Illinois during the relevant class period.  (Appendices 10, only the beginning and ends of each list have been filed to avoid unnecessary bulk).   Appendices 2-9 contain other similar complaints filed by defendant against Illinois residents in which defendant has attached a similar "statement of account."

10.    A class of 40 satisfies the numerosity requirement, and that is clearly the case here.

11.    Plaintiff will obtain the exact number of class members through discovery, and requests a briefing schedule long enough to obtain such information.

12.    There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.  The predominant common questions are:

a.    Whether defendant engaged in a practice of attaching a "statement of account" to its collection complaints similar to Appendix 1, Exhibit C;

b.    Whether the "statement of account" which defendant attaches to its state court complaints are false;

c.    Whether such misrepresentations violated the FDCPA.

13.    The only individual issue is the identification of the class members, a

3

matter capable of ministerial determination from the records of defendant and its agents.

14.     Plaintiff's claims are typical of those of the class members.  All are based on the same factual and legal theories.

15.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in bringing class actions and collection abuse claims. (Appendix 11)

16.     A class action is superior for the fair and efficient adjudication of the class members' claims, in that:

a.     Congress specifically contemplated FDCPA class actions as a principal means of enforcing the statute;

b.     Consumers are unlikely to recognize the violation;

c.     A class action is necessary to determine that defendant's conduct is a violation of law and bring about its cessation.

17.     In further support of this motion, plaintiff submits the accompanying memorandum of law.

WHEREFORE, plaintiff respectfully requests that this Court enter an order determining that this action may proceed as a class action and designating Edelman, Combs, Latturner & Goodwin, LLC counsel for the class.

Respectfully submitted,


s/ Daniel A. Edeman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

5

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on June 9, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and served the following via Certified Mail:

ELITE RECOVERY SERVICES, INC.
c/o Lexis Document Solutions, Inc., Registered Agent
801 Adlai Stevenson Drive
Springfield, IL  62703

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

# APPENDIX 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| ELITE RECOVERY SERVICES S/I/I TO HOUSEHOLD/ORCHARD BANK ) | Case No. |
| ) | Contract |
| ) | 08 M 1    127418 |
| Plaintiff, ) | |
| vs. ) | Amount Claimed $1,101.77 |
| ) | Plus attorney fees and costs |
| BYRON GLENN WILLIS ) | |
| ) | Return Date:  MAY 0 8 2008 |
| Defendant(s) ) | |

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO HOUSEHOLD/ORCHARD BANK, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), BYRON GLENN WILLIS  , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) BYRON GLENN WILLIS  , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), BYRON GLENN WILLIS  , HOUSEHOLD/ORCHARD BANK , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $1,101.77, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO HOUSEHOLD/ORCHARD BANK, prays judgment be entered in its favor and against the Defendant(s), BYRON GLENN WILLIS  , in the amount of $1,101.77, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY:_____
        For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
218596

# EXHIBIT A

## AFFIDAVIT

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, HOUSEHOLD/ORCHARD BANK transmitted certain electronic data pertaining to the particulars of the indebtedness of WILLIS, BYRON GLENN. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of WILLIS, BYRON GLENN (SSN# XXX-XX- 8395) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of HOUSEHOLD/ORCHARD BANK, the original creditor of the indebtedness of WILLIS, BYRON GLENN set forth above, pursuant to a valid purchase agreement.

7. I affirm that WILLIS, BYRON GLENN is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of WILLIS, BYRON GLENN.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this *16th* day of January, 2008.

_____
Notary Public

My Commission Expires:

JILL S. ANDERSON
Notary Public, State of New York
Qualified In Erie County
My Commission Expires July 21, 20 *11*

Ref#: 770263

# EXHIBIT B

# Household Bank®

## CARDMEMBER AGREEMENT AND DISCLOSURE STATEMENT

Please keep with your important papers.

## AG1819 (7/03)

The changes highlighted in blue herein are effective with the first day of your billing cycle that ends in November 2003. These changes will apply to new and existing balances on your Account.

## AGREEMENT TO TERMS AND DEFINITIONS

This Cardmember Agreement and Disclosure Statement, the enclosed document with important Information Regarding Your Account, and any amendments to these are collectively the "Agreement" that governs the open end line of credit we have established for your Account. "Card" means your credit card, and "you," and "your" refer to all persons who have applied for the Account. "Card" means your credit card (and any "Card" means any credit card (s). By "us" and "our" refer to Household Bank (SB), N.A. bound by this Agreement from the date of your first transaction. You may cancel your Account by returning the Card(s) and by not paying any fees and your Account by returning (without paying) any fees.

You agree to use your Account only for personal, family, household, or charitable purposes. You agree not to use your Account to make payments to us or any of our affiliates. You agree to only use your Account to make payments that will not cause your Account to exceed your credit limit and for lawful purposes and will reimburse us for all resulting amounts and expenses incorporated in Van International for all resulting amounts and expenses.

### PROMISE TO PAY

You promise to pay according to the terms of this Agreement, including the amount we extend to you or to anyone you authorize to use your Account; (b) finance charges, late charges, over limit charges and administrative charges; (c) any returned check, etc.) provided in this Agreement; and (d) collection costs and attorney's fees to the extent permitted by applicable law.

If your Account is a joint Account, each joint Accountholder is jointly and individually responsible for all amounts due under this Agreement regardless of any statement you. If either joint Accountholder dies, changes mental capacity, divorces or other legal proceeding or any agreement separates any of this Agreement, they may continue to pay everything owed to us or us. If this Agreement, but you will not be able to make new charges on your Account.

### USING YOUR ACCOUNT

You can access your Account using your Card or by other means approved by us which may include advance transactions. Cash advances include all advances which may include balance transfers and advances, etc.) at a money order, traveler's check, etc. We set a separate credit transaction (such as purchasing a money order, traveler's check, etc. We set a separate credit limit, or a lottery ticket) as determined by us. We may limit the dollar amount and/or frequency of any type of transaction without notice to you.

### YOUR CREDIT LIMIT

We will notify you of your credit limit, which may change from time to time. We agree not to allow your unpaid balance to exceed your credit limit. Your unpaid balance includes finance Charges and other charges. We will set a separate credit transaction (such as purchasing a money order, traveler's check, etc.) as determined by us. We may limit the dollar amount and/or frequency of any type of transaction without notice to you.

You must pay at least the Minimum Payment by the Payment Due Date. The close of your billing cycle. You may pay more than the Minimum Payment and Payment due will be rounded up to the next dollar any time. Your Minimum Payment each billing cycle is equal to the greater of (1) 2.5% of New Balance, or (ii) $15 (or the New Balance if it is less than $15). At our option, we may adjust...

### PAYMENT

Each statement returned from us will identify a Minimum Payment and Current Payment Due. The Minimum Payment is calculated as follows:

- (1) If your New Balance is not more than $15, your Minimum Payment is the greatest of:
- (2) If your New Balance is more than $15, your Minimum Payment is the greater of:
- $15
- 1% of the New Balance shown on your statement, or
- the greater of any amount past due or any overlimit amount.

The Current Payment Due is the sum of:
- your Minimum Payment, and
- the greater of any amount past due or overlimit amount.

An overlimit amount is the amount by which your New Balance exceeds your credit limit. Your Minimum Payment and Current Payment Due will be rounded up to the nearest dollar, unless doing so will cause the resulting value to exceed the New Balance.

You must pay at least the Current Payment Due in time to be credited to your Account by the Payment Due Date, and failure to do so constitutes a default of this Agreement. If you do not pay at least the Minimum Payment and amount past due in time to be credited to your Account by the Payment Due Date, you may be assessed a late payment fee. For a payment to be credited to your Account as of a particular day, we must receive your payment by the date and time shown on your billing statement instructions. The Payment Due Date will be determined by the billing cycle in time it be credited to your Account and a of a particular day, we must receive payment by the date and time shown on your billing statement. If your payment is late or partial, without waiving our rights, we can accept late payment, checks or other instruments marked "payment in full" or language having similar effect without losing any of our rights under this Agreement.

### PROMISE TO PAY

All payments must be in U.S. dollars. If you pay by mail, it must be sent to the address specified on your billing statement. If you pay by a negotiable instrument, such as a money order or check, it must be in a form that is acceptable to us and must be drawn on a U.S. financial institution. Disputed payments, including those marked "Payment in Full" or otherwise restrictively endorsed, must be sent to us. If we accept such payments and any that are late or partial, we can waive our rights to enforce this Agreement. If your check returns your authorization to collect it electronically via an ACH transaction.

You request a change to your billing cycle date no more than once a year. You agree that charges based on periodicity may vary if we increase the time period for which you pay periodic finance charges.

### APPLICATION OF PAYMENTS

Your payments will be applied as we determine, and may change from time to time, without notice.

### ANNUAL PERCENTAGE RATES AND PERIODIC RATES FOR VARIABLE RATE ACCOUNTS

The Daily Periodic Rate used to determine your periodic Finance Charge will be a variable rate which may change. The Spread, Annual Percentage Rate (APR), Daily Periodic Rate, and minimum rate of Annual Charge for the variable Customary APR for the fixed Customary Rate ("CAPR") and corresponding Daily Periodic Rate for the fixed Customary Rate will be a fixed rate. The Annual Rate is determine your periodic Finance Charges will be a fixed rate. The Annual Rate is determine your periodic Finance Charge will be the variable Customary Rate purchases, balance transfers, and cash advances, and the Default APR for credit card purchases and purchases, balance enclosed document entitled "Important Information Regarding Your Account". We calculate the APR by adding the applicable Spread (explained in the enclosed document entitled "Important Information Regarding Your Account". Different types of transactions may have different APRs. The Daily Periodic Rate is the corresponding APR divided by 365.

### ANNUAL PERCENTAGE RATES AND PERIODIC RATES FOR FIXED RATE ACCOUNTS

The Daily Periodic Rate used to determine your periodic Finance Charge will be a fixed rate. The Annual Rate is determine your periodic Finance Charges will be the variable Customary Rate purchases, balance transfers, and cash advances, and the Default APR for credit card purchases and purchases, balance enclosed document entitled "Important Information Regarding Your Account". Different types of transactions may have different APRs. The Daily Periodic Rate is the corresponding APR divided by 365.

### PAYMENT

Each statement returned from us will identify a Minimum Payment and Current Payment Due...

type of transaction. The period of time (or which the promotional rate applies may be limited. Certain promotional offers may or may not be subject to cash advances done during that period, will be disclosed to you. Any promotional rate otherwise be subject to the rates of this Agreement.

### ANNUAL FEE

The enclosed document entitled "Important Information Regarding Your Account" indicates whether or not your Account is subject to an Annual Fee, and if so, the amount. If there is an Annual Fee, you agree to pay a non-refundable Annual Fee for your Account in time to time. This Annual Fee compensates Household Bank, in part, for the membership services provided or made available to you throughout the time to access customer service and to use your Card at any time. If you do not pay the Annual Fee, the right of the cardmember to withhold payment of disputed charges, and the handling and mailing of the monthly billing statement. You agree that the Annual Fee will be charged to your Account.

### MINIMUM FINANCE CHARGE

There will be a Minimum FINANCE CHARGE of $2.00 for each billing cycle in which a periodic Finance Charge is applicable. Any Minimum Finance Charge may increase the actual Annual Percentage Rate on your Account.

### LATE CHARGE/LATE PAYMENT FEE

We will add a late charge or late payment fee to your Account for each billing cycle you fail to make a Minimum Payment in time to be credited to your Account by the Payment Due Date. This late charge will be charged the payment fee is $35.

Effective with the first day of your billing cycle that ends in November 2003, you will no longer be assessed LATE CHARGE/LATE PAYMENT FEE paragraph is replaced with this following:

### LATE CHARGE/LATE PAYMENT FEE

We will add a late charge or late payment fee to your Account for each billing cycle you fail to make a Minimum Payment in time to be credited to your Account by the Payment Due Date. This late charge will be charged the payment fee is $35.

### RETURNED CHECK CHARGE/RETURNED PAYMENT FEE

We will add a fee to your Account each billing cycle if a payment check, deduction, or similar instrument is not honored on presentment. This fee also applies to any check or other financial institution. This fee is $35.

### OVERLIMIT FEE

We will add an overlimit fee to your Account for each billing cycle you fail to pay at least the Minimum Payment at any time during that billing cycle. We may impose this fee even if we authorize or impose any charges that cause your balance to exceed your credit limit. This fee is $35.

### RESEARCH CHARGE

You agree to pay $7 for each and/or copy you request and $5 for each statement copy you request.

### CHANGE OF TERMS (INCLUDING FINANCE CHARGES) WE MAY CHANGE (A) ANY PART OF THIS AGREEMENT OR ADD OR DELETE ANY TERMS AT ANY TIME, INCLUDING WITHOUT LIMITATION ADDING OR INCREASING FEES, INCREASING YOUR PERIODIC PAYMENT AND INCREASING THE AMOUNT OF FINANCE CHARGE, OR CHANGING THE RATE OR AMOUNT OF COMPUTING THE BALANCE UPON WHICH FINANCE CHARGES ARE ASSESSED. NOTICE WILL BE PROVIDED TO YOU WHEN REQUIRED BY APPLICABLE LAW UNLESS OTHERWISE STATED, CHANGES APPLY TO BOTH NEW AND OUTSTANDING BALANCES.

### DEFAULT AND TERMINATION OF AGREEMENT

You will be in default under this Agreement if: (a) you fail to make at least the Minimum Payment in time to be credited to your Account by the Payment Due Date; (b) you violate any other provision of this Agreement; (c) you...

**CREDIT AUTHORIZATIONS**

**CARD RENEWAL**

Cards are issued with an expiration date. We have the right not to renew your Card for any reason.

**CARD CANCELLATION**

**CLOSING YOUR ACCOUNT**

**LIABILITY FOR UNAUTHORIZED USE**

**LOST OR STOLEN CREDIT CARD/CHECKS**

You are responsible for notifying us immediately of any credit cards and checks are lost or stolen. You may notify us by calling (800) 654-6104.

**CHANGE OF NAME, ADDRESS, TELEPHONE NUMBER OR EMPLOYMENT**

You agree to give us prompt notice of any change in your name, mailing address, telephone number or place of employment.

**SECURITY**

**FOREIGN TRANSACTIONS**

**FOR MASTERCARD ACCOUNTS**

**FOR VISA ACCOUNTS**

**APPLICABLE LAW**

**ASSIGNMENT OF ACCOUNT**

**CERTAIN PRIVACY PRACTICES**

**INFORMATION SHARING WITH AFFILIATES**

**CREDIT REPORTING**

**UPDATED FINANCIAL AND OTHER INFORMATION**

**ARBITRATION**

**WAIVER**

**SEVERABILITY**

... and this arbitration agreement shall govern. No class action or joint or consolidated of any Claim with the claim of any other person are permitted in arbitration without the written consent of you and us.

THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.

You may contact, obtain the arbitration rules of, or file a Claim with NAF, AAA, or JAMS as follows:

| JAMS | American Arbitration Association | National Arbitration Forum |
|---|---|---|
| 45 Broadway | 1150 Connecticut Ave, NW, 6th Floor | P.O. Box 50191 |
| New York, NY 10006 | Washington, DC 20036-4104 | Minneapolis, MN 55405 |
| www.jamsadr.com | www.adr.org | www.arb-forum.com |
| Dispute (Claims under $10,000) | Arbitration Rules for Consumer | Code of Procedure |
| Commercial Arbitration Rules and | Disputes | |
| Procedures | (if applicable) | |

## What To Do If There's An Error In Your Bill

YOUR BILLING RIGHTS — KEEP THIS NOTICE FOR FUTURE USE
This notice contains important information about your Account rights and our responsibilities under the Fair Credit Billing Act.

NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.
If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.

If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before this automatic payment is scheduled to occur.

YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone to whom we furnished credit information about you that you have a question about your bill. And we must tell you the name of anyone to whom we gave this information. We must tell anyone we report you to that the matter has been settled between us when it is finally so.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that that it is due.

If we don't follow these rules, we can't collect the first $50 of the questioned

... with a credit card, and you have tried in good faith to correct the problem with the merchant, you have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in the same state as your current mailing address (or, if not within the same state, within 100 miles from this address); and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or service.

Household Credit Services, Inc. provides processing services for Household Bank (SB), N.A.

You may write to us at:
Household Bank (SB), N.A.
1111 Town Center Drive
Las Vegas, Nevada 89134
Website Address: www.householdbank.com

[signature]

Thomas M. Kimble
Executive Vice President
June 1, 2003

MasterCard is a registered mark of MasterCard International, Incorporated.
Visa is a registered mark of Visa International and Visa U.S.A.

©2003 Household Credit Services, Inc.

# EXHIBIT C

218596

Statement of· Account    06-7536

**Original Creditor: HOUSEHOLD/ORCHARD BANK**

Collections Department: 800-780-6165

Mail Payments to:         ERS
                          PO BOX 3474
                          Buffalo, NY 14240-3474

ERS Account Number:                  
Current Statement date:              1/15/2008
Original Account Number:                          5197
Placement Balance:                   $ 997.25
Interest:                            $104.52

TOTAL AMOUNT DUE:                    $1,101.77

THIS· COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.

          ******Total Amount Due: $1,101.77

WILLIS, BYRON GLENN





Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474

# APPENDIX 2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| ELITE RECOVERY SERVICES S/I/I TO | ) Case No. |
| DISCOVER CARD | ) Contract |
| | ) **08 M 1   1 2 7 7 0 4** |
| Plaintiff, | ) |
| vs. | ) Amount Claimed $1,695.26 |
| | ) Plus attorney fees and costs |
| RAE RICHARDSON | ) |
| | ) Return Date:  **MAY 0 8 2008** |
| Defendant(s) | ) |

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), RAE RICHARDSON , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) RAE RICHARDSON  , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), RAE RICHARDSON  , DISCOVER CARD , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $1,695.26, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, prays judgment be entered in its favor and against the Defendant(s), RAE RICHARDSON  , in the amount of $1,695.26, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY: _____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
218607

## **AFFIDAVIT**

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover Card transmitted certain electronic data pertaining to the particulars of the indebtedness of RICHARDSON, RAE. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of RICHARDSON, RAE (SSN# XXX-XX- 8603) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover Card, the original creditor of the indebtedness of RICHARDSON, RAE set forth above, pursuant to a valid purchase agreement.

7. I affirm that RICHARDSON, RAE is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of RICHARDSON, RAE.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this 17 day of October, 2007.

_____
Notary Public

My Commission Expires:

    Ref#: 734790

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 11

**PLAINTIFF'S EXHIBIT**

06-7519

```
=================================================================
                      Statement of Account
=================================================================
Original Creditor: Discover Card
=================================================================
Collections Department: 800-780-6165

Mail Payments to:        ERS
                         PO BOX 3474
                         Buffalo, NY 14240-3474

=================================================================

ERS Account Number:
Current Statement date:          10/10/2007
Original Account Number:                      1377
Placement Balance:               $1551.37
Interest:                        $143.89

TOTAL AMOUNT DUE:                $1,695.26

=================================================================

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.


=================================================================
        ******Total Amount Due: $1,695.26
=================================================================


RICHARDSON, RAE



Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474
```

PLAINTIFF'S
EXHIBIT

# APPENDIX 3

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| ELITE RECOVERY SERVICES<br>S/I/I TO DISCOVER CARD | ) Case No.<br>) Contract 08 M 1 1504 0 1 |
| Plaintiff, | )<br>) |
| vs. | ) Amount Claimed $2,480.43<br>) Plus attorney fees and costs |
| KEITH M ROBBINS | )<br>) |
| Defendant(s) | ) Return Date: MAY 2 2 2008<br>) |

### VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), KEITH M ROBBINS , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) KEITH M ROBBINS , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), KEITH M ROBBINS , DISCOVER CARD , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $2,480.43, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, prays judgment be entered in its favor and against the Defendant(s), KEITH M ROBBINS    , in the amount of $2,480.43, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY:_____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
218699

## **AFFIDAVIT**

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover Card transmitted certain electronic data pertaining to the particulars of the indebtedness of ROBBINS, KEITH M. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of ROBBINS, KEITH M (SSN# XXX-XX- 8464) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover Card, the original creditor of the indebtedness of ROBBINS, KEITH M set forth above, pursuant to a valid purchase agreement.

7. I affirm that ROBBINS, KEITH M is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of ROBBINS, KEITH M.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this 15 day of October, 2007.

_____
Notary Public

My Commission Expires:

Ref#:  492661

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 _11_

**PLAINTIFF'S
EXHIBIT**

```
===============================================================
                   Statement of Account
===============================================================
Original Creditor: Discover Card
===============================================================
Collections Department: 800-780-6165

Mail Payments to:          ERS
                           PO BOX 3474
                           Buffalo, NY 14240-3474


===============================================================

   ERS Account Number:        ███████
   Current Statement date:    10/10/2007
   Original Account Number:   ████████3325
   Placement Balance:         $2231.24
   Interest:                  $249.19

   TOTAL AMOUNT DUE:          $2,480.43

===============================================================
```

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.

```
===============================================================
        ******Total Amount Due: $2,480.43
===============================================================
```

ROBBINS, KEITH M
████████████████████
████████████████████


Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474



PLAINTIFF'S
EXHIBIT

# DISCOVER FINANCIAL SERVICES GROUP

## CASHBACK BONUS℠
### TERMS AND CONDITIONS

The Cashback Bonus Terms and Conditions are not a part of the Cardmember Agreement.

Cashback Bonus℠ is an amount denominated in dollars and cents which may be earned by Discover Card Cardmembers by using their Discover Card for purchases. Cashback Bonus is not earned for cash advances or balance transfers, Cashback Bonus is subject to these terms and conditions and is subject to change without notice. Cashback Bonus is subject to disqualification prior to being awarded in the circumstances described below.

1. Cashback Bonus is calculated based on an annual period corresponding to the Cardmember's anniversary year. The first anniversary year begins on the date the Card is issued and ends on the last day of the twelfth monthly billing period which follows. Each successive anniversary year is the approximate one-year period comprised of the next twelve monthly billing periods.

The amount of Cashback Bonus is calculated by multiplying each purchase by:
- .25% (.0025) if the purchase is part of the first $1,000 in purchases during the anniversary year.
- .50% (.0050), if the purchase is part of the second $1,000 in purchases during the anniversary year.
- .75% (.0075), if the purchase is part of the third $1,000 in purchases during the anniversary year.
- 1.0% (.01), if the purchase is part of the purchases in excess of $3,000 during the anniversary year.

The total of such calculations for each anniversary year is the amount of Cashback Bonus which will be awarded as described below. The calculation begins again with the beginning of each anniversary year. The Cardmember's monthly billing statement will show the amount of Cashback Bonus and total purchases through the date of the statement for each anniversary year.

4. Cashback Bonus is awarded shortly after each anniversary year. The exact method of award may change from year to year, but the Cardmember

5. Presently, Cashback Bonus is awarded by means of (i) a credit to Account. If the amount is less than $2.00 and (ii) a check mailed to the Cardmember (by either first class or third class mail), if the amount is $2.00 or greater.

6. Cashback Bonus is awarded to Cardmembers in good standing at the time of the award, the award may, at the option of Discover Card, have their Cashback Bonus applied automatically as a credit to their Account.

7. In the event a Card is lost or stolen, the amount of Cashback Bonus, the amount of qualifying purchases and the anniversary date from the old Account are transferred to the new Account.

8. Discover Card reserves the right to make appropriate adjustments to Cashback Bonus amounts in respect of a prior purchase (e.g., a credit to an Account in respect of a prior purchase will result in a reduction of Cashback Bonus).

will have the opportunity to receive the Cashback Bonus in a cash equivalent (i.e., check or credit to the Cardmember's Discover Card Account). As part of the award method, the Cardmember may have the opportunity to make an election or to exercise a choice as to the manner in which the Cashback Bonus is awarded or the award redeemed. The failure to make such election or choice on a timely basis may result in the exercise of default options or in the disqualification of the Cashback Bonus award.   It is the Cardmember's responsibility to notify Discover Card in the event a Cashback Bonus award is not received for any reason.

Cardmembers have no right to accrued but unawarded Cashback Bonus amounts; if an Account is closed for any reason prior to an anniversary date, any accrued Cashback Bonus will be forfeited.

CB04DEY 9/6

---

# DISCOVER FINANCIAL SERVICES GROUP

## ALLSTATE LIFE INSURANCE COMPANY
Home Office - Northbrook, Illinois

### CERTIFICATE OF INSURANCE

### FLIGHT ACCIDENTAL DEATH INSURANCE

Allstate will pay the applicable Accidental Death benefit amounts for Injury sustained by an Insured Person while occupying an aircraft as a farepaying passenger when fare is charged in advance, and not as a pilot or crew member. The aircraft must be provided and operated by a duly licensed common carrier for regular passenger service.

Allstate Life Insurance Company (herein called "Allstate") has issued Master Policy No. 1401363 to Greenwood Trust Company (herein called "Policyholder") which provides Group Accidental Death Insurance for Cardmembers of the Policyholder and their eligible family members.

### BENEFIT AMOUNT

Accidental Death Benefit when Insured Person's full air fare is charged in advance to the Discover Card Account: $500,000.

### DEFINITIONS

"Insured Person" means a Discover Cardmember in good standing; and the following dependents of the cardmember: the spouse of the cardmember if a resident of the same household; and each unmarried child, including stepchildren and adopted children, not more than 19 years of age (23 if a full-time student), who is dependent upon the cardmember for support and maintenance. In no event will the same person qualify as an Insured Person under more than one Discover Card. Coverage for any handicapped child who will not terminate solely by reaching the limiting age. Coverage will continue if the child is and continues to be both (1) incapable of self-sustaining employment because of mental retardation or physical handicap and (2) chiefly dependent upon the cardmember for support and maintenance.

"Injury or injured" means bodily injury caused by an accident occurring while the insurance is in force for the Insured Person and which injury results, within 365 days of the accident, directly and independently of all other causes, in death.

"Occupying" means riding in or upon or entering into or alighting from.

### EXCLUSIONS

Accidental Death Benefits are not payable for deaths caused by:
1. suicide while sane or insane; or
2. declared or undeclared war or any act thereof.

### TERMINATION OF COVERAGE

The insurance on each Insured Person will automatically terminate at 12:01 a.m. on the date that they no longer fulfill the requirements of an Insured Person as defined, or upon termination of the Master Policy. Termination shall be without prejudice to any claim originating prior to the effective date of termination.

### GENERAL PROVISIONS

BENEFICIARY: Unless otherwise specified to the Cardmember, any sum due under the policy for loss of life of an Insured Person will be paid

---

# EXHIBIT



DISCOVER FINANCIAL SERVICES card

**MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be the minimum of any amount past due and the minimum monthly payment. The minimum monthly payment each month will be the greater of $10.00 or an amount equal to 1/36th of the New Balance, (rounded to the next higher whole dollar amount). However, if the New Balance is less than $10, the minimum monthly payment will be the amount of the New Balance. You can pay ahead. The Minimum Payment Due for each monthly billing period will be reduced by the amount you have paid in excess of the Minimum Payment Due in any of the three previous monthly billing periods, less any portion of the excess already used to reduce payments. However, there will be no reduction if you have exceeded your credit limit or you have paid the entire New Balance shown on your prior statement. There will also be no reduction if your Account is not current, has not generally been paid in an acceptable manner or is otherwise not in good standing.

**CREDIT BALANCES.** We will refund any credit balance within seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing periods.

**BALANCE TRANSFERS.** We may periodically offer you the opportunity to transfer balances from other credit card accounts to your Account. Each offer will contain an initial special rate, which will be the Annual Percentage Rate that will apply to transferred balances for the time period specified in the offer. After the expiration of this time period, the Annual Percentage Rate that applies

for purchases will apply to transferred balances. Balance transfers subject to the initial special rate are-referred to as special rate balance transfers; balance transfers for which the initial special rate has expired are referred to as purchase rate balance transfers.

Each offer will contain an expiration date. If you attempt to transfer balances by means of a check after the expiration date, we will treat the transaction as a cash advance. We will not make balance transfers attempted by means of a coupon after the expiration date.

**PERIODIC FINANCE CHARGES.** Except as explained below, Periodic Finance Charges are imposed on purchases, cash advances and balance transfers from the date the transaction occurs to the date of repayment. If the transaction is posted to your Account after the close of the billing period in which it occurs, we will treat the transaction as having occurred on the first day of the billing period in which it is posted to your Account. We will assess Periodic Finance Charges as follows:

**(1) Current Billing Period**

Periodic Finance Charges are imposed for the current billing period on purchases, cash advances and balance transfers unless you paid, by the Payment Due Date, the New Balance shown on your previous billing statement. We compute Periodic Finance Charges each day by multiplying your daily balances of purchases, cash advances and balance transfers by the applicable Daily Periodic Rates. Only special rate balance transfers are included in the daily balance of balance transfers; purchase rate balance transfers are included in the

daily balance of purchases. At the end of the current billing period we add up the results from the balance those balance transfers that become purchase rate balance transfers on that day.

For purchases, the daily balance is calculated on each day by first adding the following to the previous day's daily balance: purchases made that day, fees charged that day (with the exception of Transaction-Fee Finance Charges) and Periodic Finance Charges that were already imposed on that day. On the first day that are applied against the balance of purchases and purchase rate balance transfers on that day. On the first day of the billing period we also add to the balance those balance transfers that become purchase rate balance transfers

For cash advances, the daily balance is calculated on each day by first adding the following to the previous day's daily balance: cash advances made that day, Transaction Fee Finance Charges for cash advances made that day, and Periodic Finance Charges that were already imposed on that day. On the first day of the billing period we also add to the balance those balance transfers that are applied against the balance of cash advances on that day.

For balance transfers, the daily balance is calculated on each day by first adding the following to the previous day's daily balance: balance transfers made that day and Periodic Finance Charges charged on the previous day's daily balance, and by then subtracting any credits and payments that are applied against the balance of balance

DISCOVER FINANCIAL SERVICES card

transfers on that day. On the first day of the current billing period we also subtract from the balance those balance transfers that become purchase rate balance transfers on that day.

**(2) Previous Billing Period**

Periodic Finance Charges are imposed for the previous billing period on previous billing period purchases, cash advances and balance transfers unless Periodic Finance Charges were already imposed for that billing period, or you paid the New Balance shown on your previous billing statement by the Payment Due Date. To compute these charges, we use the same method of calculation described above, except that Periodic Finance Charges for the current billing period are based on the applicable Daily Periodic Rates are applied to daily balances of purchases, cash advances and balance transfers for each day of the previous billing period. These daily balances are also computed as described above, with the "previous day's daily balance" considered to have been zero on the first day of the billing period.

**(3) Daily Periodic Rates and Annual Percentage Rates**

The Daily Periodic Rates applicable to purchases and cash advances for the current billing period and the previous billing period are based on the Annual Percentage Rate in effect for each billing period as determined below. The Daily Periodic Rates for each billing period and Periodic Rates for each billing period and by then subtracting any credits and payments that are applied against the balance of balance transfers in effect for the billing period. The Annual

EXHIBIT D

Percentage Rate for purchases may be changed based on changes in the rate level for which you qualify, as explained below.

The Annual Percentage Rates are determined in part by the Prime Rate. For purposes of this Agreement, the Prime Rate is the highest rate of interest listed as the "prime rate" in the money rates section of The Wall Street Journal on the last business day of the month. When the Prime Rate changes, the Annual Percentage Rates will change beginning on the first day of the first billing period which begins in the calendar month following the change in the Prime Rate. Increases in the Prime Rate may cause the Daily Periodic Rates, Periodic Finance Charges and Minimum Payment Due each month to increase. The Prime Rate is merely a pricing index and does not represent the lowest or best interest rate available to a borrower at any particular bank at any given time.

(4) Annual Percentage Rate for Purchases

We may have offered you an Introductory rate on purchases. The Introductory rate is the fixed Annual Percentage Rate that will apply to purchases for the time period specified in the offer. After expiration of this time period, the Annual Percentage Rate for purchases will be as described below.

The two Annual Percentage Rates that generally apply to purchases are the Best Rate and the Standard Rate. The rate level for which you qualify is based on the total amount of purchases that you make during an annual period, as explained below. Purchases which compose this annual total are sometimes referred to as qualified purchases. We make certain appropriate adjustments to qualified purchases in respect of Account activity (e.g., a credit issued for a returned purchase).

You will qualify for and receive the Best Rate until your first Anniversary Date subject to Subsection (6) below. We refer to the date that is the last day of the twelfth billing period after your Account was opened, and each annual anniversary of that date, as your Anniversary Date. On each Anniversary Date subject to Subsection (6) below, we will determine your rate level based on total qualified purchases for the preceding 12 billing periods. You will qualify for the Standard Rate if total qualified purchases are less than $1000.00, and the Best Rate if total qualified purchases are $1000.00 or more. The new rate level will apply to outstanding purchase balance(s) beginning on the next day and through your next Anniversary Date, subject to Subsection (6) below.

The Best Rate is an ANNUAL PERCENTAGE RATE of Prime Rate plus 0 percentage points, with a minimum 12.9%. The Standard Rate is an ANNUAL PERCENTAGE RATE of the Prime Rate plus 8.9 percentage points, with a minimum 19.8%. The Daily Periodic Rates and corresponding Annual Percentage Rates in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

(5) Annual Percentage Rate for Cash Advances

The ANNUAL PERCENTAGE RATE for cash advances, subject to Subsection (6) below, is the Prime Rate plus 8.9 percentage points, with a minimum of 19.8%. The Daily Periodic Rate and corresponding Annual Percentage Rate in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

(6) Rate Disqualification

If as of the end of any billing period, including a billing period ending on an Anniversary Date, you have failed to make the Minimum Payment Due by the Payment Due Date in that billing period, and you failed to make the Minimum Payment Due by the Payment Due Date in the preceding billing period, you will be disqualified for the rates described in Subsections (4) and (5) above. If this occurs, your ANNUAL PERCENTAGE RATE for purchases and cash advances will change to the Prime Rate plus 13.9 percentage points, with a minimum of 19.8%. This rate level will apply to your Account (including outstanding balances) beginning on the next day and through your next Anniversary Date. However, if at the time you are subject to an introductory rate or a special rate balance transfer rate, the rate on the balances subject to the introductory rate or the special rate balance transfer rate will not change until the expiration of the introductory or special rate balance transfer rate period.

The Daily Periodic Rate and corresponding Annual Percentage Rate in effect on

(7) Annual Percentage Rate for Balance Transfers

The Daily Periodic Rate and corresponding Annual Percentage Rate in effect for special rate balance transfers will be set forth in the offer from us under which you make the balance transfer. As indicated in the Balance Transfers Section above, purchase rate balance transfers will be subject to the Daily Periodic Rate and corresponding Annual Percentage Rate that apply to purchases. If you received an offer prior to your receipt of this Agreement, the Daily Periodic Rates and Annual Percentage Rates in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

TRANSACTION FEE FINANCE CHARGES. We will charge you a Transaction Fee Finance Charge of 2.5% of the amount of each new cash advance. There is a minimum Transaction Fee FINANCE CHARGE of $2.00 and no maximum Transaction Fee FINANCE CHARGE. The imposition of Transaction Fee Finance Charges may result in an Annual Percentage Rate for cash advances that is higher than the nominal Annual Percentage Rate. All forms of cash advances, including the use of Discover Card Checks regardless of the purpose for which used, are subject to Transaction Fee Finance Charges. To obtain the total Finance Charge on cash advances for each billing period, we add any Transaction Fee Finance Charge for the billing period charged under this section to any Periodic Finance Charge

EXHIBIT B



**EXHIBIT**

**DISCOVER** FINANCIAL SERVICES CARD

- to the Cardmember, if living, otherwise;
- to the spouse of the Cardmember, if living, otherwise;
- equally to the then living lawful children of the Cardmember including stepchildren and adopted children, if any, otherwise;

1. equally to the Cardmember's parents or parent then living, otherwise;

5. to the estate of the Cardmember.

CHANGE OF BENEFICIARY: The Cardmember may change the beneficiary at any time by writing to Allstate. Once the change is recorded by Allstate it will take effect as of the day the request was signed, subject to any claim payment made before such recording. The consent of the beneficiary is not needed for the change.

HOW TO REPORT A CLAIM: Written notice of claim must be given to Allstate at its Home Office within six months after the occurrence of any loss covered by the Policy, or as soon as reasonably possible.

Notice given by or on behalf of the claimant or the beneficiary with information sufficient to identify the Insured Person shall be deemed notice.

CLAIM FORMS: Once Allstate receives written notice of a claim, it will send forms for filing proof of loss. If these forms are not sent to the claimant within 15 days after Allstate receives notice, the proof of loss requirements will be met, by giving Allstate written proof of the occurrence, and cause of the loss within the time stated in the Proof of Loss Provision.

PROOF OF LOSS: Written proof of loss must be furnished to Allstate within nine months after

the date of loss. If this is not reasonably possible, Allstate may not deny the claim if the proof is furnished as soon as reasonably possible, but not later than one year from the time required, unless the claimant was legally incapable of doing so.

PAYMENT OF CLAIM: Benefits payable for loss under the policy will be paid immediately upon receipt of due written proof of loss. If any benefit under this policy is payable to a minor or is otherwise not competent to give a valid release, Allstate may pay part of the benefit (up to $1,000) to any blood relative or the Insured Person.

Any payment made in good faith shall fully discharge Allstate to the extent of such payment.

LEGAL ACTION: Suit for benefits under the policy cannot be brought sooner than 60 days after Allstate received written proof of loss as required, and no such action may be initiated after three years from the time written proof of loss is required.

CONFORMITY WITH STATE LAWS: Any provision of the policy which, on its effective date, is in conflict with any law to which it is subject, is amended to conform to the minimum requirements of such law.

AUTOPSY: Allstate at its own expense shall have the right and opportunity to make an autopsy where it is not forbidden by law.

**ALLSTATE LIFE INSURANCE COMPAN**

Michael P. Duncan
Secretary

Louis G. Lower,
President

---

**DISCOVER** FINANCIAL SERVICES CARD

# Your Billing Rights
## KEEP THIS NOTICE FOR FUTURE USE

his notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper at the address listed on your bill or Notice of Billing Errors. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

2. **Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any ques-

tioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, you may have to pay the finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

3. **Special Rule for Credit Card Purchases**

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have a right to not pay the remaining amount due on the goods or services. There are two limitations on this right:

(a) you must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) the purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the goods or services.

BRREV.042

calculated under the Periodic Finance Charges section above.

MINIMUM PERIODIC FINANCE CHARGE. We will charge you a minimum Periodic FINANCE CHARGE of $.50 for any billing period in which some Periodic FINANCE CHARGE of less than $.50 would otherwise be imposed.

RETURNED CHECK FEE. We will charge you a Returned Check Fee of $15.00 each time you pay us with a check that is returned unpaid. This fee will also apply if a debit transaction to a deposit account from which you have authorized us in writing to periodically deduct all or a part of an amount you owe us under this Agreement is returned unpaid.

LATE FEE. We will charge you a Late Fee of $20.00 each time that, as of the 10th day following a Payment Due Date, you have failed to make a required payment.

RESEARCH FEE. We may charge you a Research Fee of $5.00 for each copy of a billing statement or sales slip that you request. However, we will not charge a fee if your request copies in connection with a billing error.

OVERLIMIT FEE. We will charge you an Overlimit Fee of $20.00 each time that, as of the close of a billing period, you have exceeded your credit limit. This fee may be charged even if the transaction which causes you to exceed your credit limit is authorized by us or if you exceed your credit limit due to the posting of finance charges or fees to your Account.

DEFAULT-ACCELERATION-COLLECTION COSTS. You are in default if you become

insolvent, if you file a bankruptcy petition or have one filed against you, if we have permission or legal process. However, if you are in default, you violate the terms or if court appoints a guardian for you or a conservator for your assets, if you die or if you lease information about your Account to fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your credit limit. If you are in default we may also declare the entire balance of your Account immediately due and payable without notice. If we refer the collection of your Account to an attorney, we may charge your Account to an attorney, we may charge your reasonable attorneys' fees and court costs as permitted by law and actually incurred by us.

CANCELLATION. You may cancel your Account by notifying us in writing or telephone and returning to us any unused check that we have provided you. Of course, you will still be responsible to pay any amount you owe according to the terms of this Agreement. If your Account is a joint Account, each may cancel your Account. We may cancel or suspend your Account at any time without notice. We may choose not to new your Account (beyond the expiration date shown on the face of a Card) without notice.

PRIVACY. We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account, including negative credit information. We normally report to such credit reporting agencies each month. We will

ease this information about your Account any other party without your prior writing permission or legal process. However, you are in default, you violate the terms of this Agreement or if you file a bankruptcy petition or have one filed against you, we may lease information about your Account to third parties who may assist us in enforcing our rights under this Agreement. We may so include your name and address and other identifying information on lists of our members furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to or record telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers without notice to you. We may use automated telephone equipment or prerecorded telephone calls to contact you about your Account.

CREDIT AUTHORIZATIONS. Certain purchases and cash advances will require authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction. We will not be liable to you if any of these events happen.

CHANGE OF TERMS. We may change any term or part of this Agreement, including any finance charge rate, fee or method of computing any balance upon which the finance charge rate is assessed, by sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new

charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, you will have agreed to the changes in the notice. Use of your Account after the effective date of the change will be deemed acceptance of the new terms-as of such effective date, even if you previously notified us that you did not agree to the change.

CHANGE OF ADDRESS. If you change your address you must notify us of your new address within 15 days.

ASSIGNMENT OF ACCOUNT. We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

GOVERNING LAW. This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company

DISCOVER CARD

Vice President

EXHIBIT R

# APPENDIX 4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | | |
|---|---|---|
| ELITE RECOVERY SERVICES S/I/I TO DISCOVER | ) | Case No. |
| | ) | Contract     08M1 127699 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Amount Claimed $7,307.24 |
| vs. | ) | Plus attorney fees and costs |
| | ) | |
| DONNA A SCHAEFER | ) | Return Date:    MAY 0 8 2008 |
| | ) | |
| Defendant(s) | ) | |

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), DONNA A SCHAEFER , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) DONNA A SCHAEFER , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), DONNA A SCHAEFER , DISCOVER , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $7,307.24, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER, prays judgment be entered in its favor and against the Defendant(s), DONNA A SCHAEFER , in the amount of $7,307.24, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY:_____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL 60602
312 726-1814
218568

# AFFIDAVIT

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover transmitted certain electronic data pertaining to the particulars of the indebtedness of SCHAEFER, DONNA A. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of SCHAEFER, DONNA A (SSN# XXX-XX- 7209) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover, the original creditor of the indebtedness of SCHAEFER, DONNA A set forth above, pursuant to a valid purchase agreement.

7. I affirm that SCHAEFER, DONNA A is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of SCHAEFER, DONNA A.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this 15 day of October, 2007.

_____
Notary Public

My Commission Expires:

    Ref#:  854026

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 11

**PLAINTIFF'S EXHIBIT**

```
=====================================================================
                       Statement of Account
=====================================================================
Original Creditor: Discover
=====================================================================
Collections Department: 800-780-6165

Mail Payments to:        ERS
                         PO BOX 3474
                         Buffalo, NY 14240-3474

=====================================================================

ERS Account Number:
Current Statement date:        10/10/2007
Original Account Number:                   8460
Placement Balance:             $6742.33
Interest:                      $564.91

TOTAL AMOUNT DUE:              $7,307.24

=====================================================================

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.


=====================================================================
              ******Total Amount Due: $7,307.24
=====================================================================


SCHAEFER, DONNA A



Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474
```

PLAINTIFF'S
EXHIBIT

# APPENDIX 5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| ELITE RECOVERY SERVICES S/I/I<br>DISCOVER CARD | ) Case No.<br>) Contract    $08M1$  $127696$<br>) |
| Plaintiff, | ) |
| vs. | ) Amount Claimed $2,051.62<br>) Plus attorney fees and costs |
| RONALD W PAPANEK | ) |
| Defendant(s) | ) Return Date:   MAY 0 8 2008<br>) |

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), RONALD W PAPANEK  , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) RONALD W PAPANEK  , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), RONALD W PAPANEK  , DISCOVER CARD , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $2,051.62, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, prays judgment be entered in its favor and against the Defendant(s), RONALD W PAPANEK  , in the amount of $2,051.62, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY:_____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
218610

## AFFIDAVIT

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover Card transmitted certain electronic data pertaining to the particulars of the indebtedness of PAPANEK, RONALD W. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of PAPANEK, RONALD W (SSN# XXX-XX- 2428) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover Card, the original creditor of the indebtedness of PAPANEK, RONALD W set forth above, pursuant to a valid purchase agreement.

7. I affirm that PAPANEK, RONALD W is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of PAPANEK, RONALD W.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this ___ day of January, 2008.

_____
Notary Public

My Commission Expires:

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 __

Ref#:  554965

218610

Statement of Account          O6 - 7511

Original Creditor: Discover Card·

Collections Department: 800-780-6165

Mail Payments to:          ERS
                           PO BOX 3474
                           Buffalo, NY 14240-3474

ERS Account Number:
Current Statement date:          1/15/2008
Original Account Number:          ████████████5254
Placement Balance:               $1,835.62
Interest:                        $216

TOTAL AMOUNT DUE:                $2,051.62

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.

******Total Amount Due: $2,051.62



PAPANEK, RONALD W



RECEIVED
JAN 2 4 2008
UNDERWOOD LAW FIRM

Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474

# APPENDIX 6

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

ECOVERY SERVICES S/I/I TO                    ) Case No.
R - SECONDS                                  ) Contract
                                             )          08 M 1    1 2 7 6 9 0
    Plaintiff,                               )
                                             )
                                             )
                                             ) Amount Claimed $2,023.72
AYNE                                         ) Plus attorney fees and costs
                                             )
                                             )
    Defendant(s)                             ) Return Date:    MAY 0 8 2008
                                             )

## VERIFIED COMPLAINT AT LAW

/ COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER – SECONDS, by and
torneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), ANDRE
leges and states as follows:

intiff acquired by purchase assignment from the original credit issuer or its successor the account of
ANDRE LAYNE    , and is now the bona fide holder of this claim.

n information and belief from the representations of the assignor, at the specific instance and request of
s), ANDRE LAYNE    , DISCOVER – SECONDS  , directly or through a retail merchant , issued to
certain credit card/revolving charge (open end consumer credit) account.

n information and belief Defendant(s) made various charges to said account since the date of issuance
nting for payments made, there remains an unpaid and past due balance in the sum of $2,023.72, as set
hed affidavit.

nd for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to
ng balance.

iff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

FORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER – SECONDS, prays
ed in its favor and against the Defendant(s), ANDRE LAYNE    , in the amount of $2,023.72, plus
y fees and costs.


ADLER & ASSOCIATES, LTD.

BY: _____
        For the Firm


.TD., #00512
IIFF

                                                                                York

218585

Statement of Account    O6-7472

======================================

Original Creditor: Discover - Seconds

======================================

Collections Department: 800-780-6165

Mail Payments to:        ERS
                         PO BOX 3474
                         Buffalo, NY 14240-3474

======================================

ERS Account Number:
Current Statement date:        1/15/2008
Original Account Number:                    9112
Placement Balance:             $1,779.07
Interest:                      $244.65

TOTAL AMOUNT DUE:              $2,023.72

======================================

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.

======================================

        ******Total Amount Due: $2,023.72

======================================



LAYNE, ANDRE



RECEIVED
JAN 2 4 2008
UNDERWOOD LAW FIRM

Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474

# APPENDIX 7

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | | |
|---|---|---|
| ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD | ) | Case No. |
| | ) | Contract |
| | ) | |
| | ) | 08 M 1   1 2 7 6 8 5 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Amount Claimed $1,770.63 |
| | ) | Plus attorney fees and costs |
| SONIA N HICKS | ) | |
| | ) | Return Date: |
| Defendant(s) | ) | MAY 0 8 2008 |

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), SONIA N HICKS    , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) SONIA N HICKS    , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), SONIA N HICKS    , DISCOVER CARD    , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $1,770.63, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, prays judgment be entered in its favor and against the Defendant(s), SONIA N HICKS    , in the amount of $1,770.63, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY:_____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL 60602
312 726-1814
218573

# AFFIDAVIT

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover Card transmitted certain electronic data pertaining to the particulars of the indebtedness of HICKS, SONIA N. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of HICKS, SONIA N (SSN# XXX-XX- 4516) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover Card, the original creditor of the indebtedness of HICKS, SONIA N set forth above, pursuant to a valid purchase agreement.

7. I affirm that HICKS, SONIA N is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of HICKS, SONIA N.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this 17 day of October, 2007.

_____
Notary Public

My Commission Expires:

Ref#: 409859

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 11

```
========================================================================
                        Statement of Account
========================================================================
Original Creditor: Discover Card
========================================================================
Collections Department: 800-780-6165

Mail Payments to:        ERS
                         PO BOX 3474
                         Buffalo, NY 14240-3474

========================================================================

ERS Account Number:          ▓▓▓▓▓▓
Current Statement date:      10/10/2007
Original Account Number:     ▓▓▓▓▓▓▓▓▓▓6225
Placement Balance:           $1583.24
Interest:                    $187.39

TOTAL AMOUNT DUE:            $1,770.63

========================================================================

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.

========================================================================
          ******Total Amount Due: $1,770.63
========================================================================


HICKS, SONIA N
▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓


Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474
```

# APPENDIX 8

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD | ) Case No. ) Contract |
| Plaintiff, | ) ) 08M1 127232 |
| vs. | ) Amount Claimed $1,915.03 ) Plus attorney fees and costs |
| LATICIA AUDREY BROWN | ) ) Return Date: MAY 0 8 2008 |
| Defendant(s) | ) |

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), LATICIA AUDREY BROWN , alleges and states as follows:

1.  That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) LATICIA AUDREY BROWN , and is now the bona fide holder of this claim.

2.  That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), LATICIA AUDREY BROWN , DISCOVER CARD , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3.  That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $1,915.03, as set forth in the attached affidavit.

4.  That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5.  That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, prays judgment be entered in its favor and against the Defendant(s), LATICIA AUDREY BROWN , in the amount of $1,915.03, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY: _____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL 60602
312 726-1814
218574

# **AFFIDAVIT**

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1.  I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2.  I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3.  In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4.  That at the time of purchase, Discover Card transmitted certain electronic data pertaining to the particulars of the indebtedness of BROWN, LATICIA AUDREY.  A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5.  I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of BROWN, LATICIA AUDREY (SSN# XXX-XX- 9367) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6.  That Elite Recovery Services Inc. is a bona fide assignee of Discover Card, the original creditor of the indebtedness of BROWN, LATICIA AUDREY set forth above, pursuant to a valid purchase agreement.

7.  I affirm that BROWN, LATICIA AUDREY is responsible for payment of interest at the applicable state legal interest rate per annum.

8.  I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of BROWN, LATICIA AUDREY.

9.  To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this /6th day of January, 2008.

_____
Notary Public

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20. _11_

My Commission Expires:

Ref#:  409550

*218574*

| Statement of Account | *06-7491* |

**Original Creditor: Discover Card**

Collections Department: 800-780-6165

Mail Payments to:
ERS
PO BOX 3474
Buffalo, NY 14240-3474

ERS Account Number:             ██████
Current Statement date:         1/15/2008
Original Account Number:        ██████7911
Placement Balance:              $1,696.75
Interest:                       $218.28

TOTAL AMOUNT DUE:               $1,915.03

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.

******Total Amount Due: $1,915.03



BROWN, LATICIA AUDREY



RECEIVED JAN 24 2008 UNDERWOOD LAW FIRM

Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474

# APPENDIX 9

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

ELITE RECOVERY SERVICES     )  Case No.
S/I/I TO DISCOVER CARD       )  Contract
                        )
       Plaintiff,        )
                        )  Amount Claimed $1,931.69
vs.                       )  Plus attorney fees and costs
                        )
HUYI MI                )  Return Date:  MAY 22 2008
                        )
       Defendant(s)     )

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), HUYI MI , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) HUYI MI , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), HUYI MI , DISCOVER CARD , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $1,931.69, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, prays judgment be entered in its favor and against the Defendant(s), HUYI MI , in the amount of $1,931.69, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY: _____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL 60602
312 726-1814
218704

```
===================================================================
                        Statement of Account
===================================================================
Original Creditor: Discover Card
===================================================================
Collections Department: 800-780-6165

Mail Payments to:        ERS
                         PO BOX 3474
                         Buffalo, NY 14240-3474


===================================================================
ERS Account Number:
Current Statement date:      10/10/2007
Original Account Number:               5292
Placement Balance:           $1727.26
Interest:                    $204.43

TOTAL AMOUNT DUE:            $1,931.69

===================================================================

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.


===================================================================
      ******Total Amount Due: $1,931.69
===================================================================


MI, HUYI



Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474
```

PLAINTIFF'S
EXHIBIT

## AFFIDAVIT

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover Card transmitted certain electronic data pertaining to the particulars of the indebtedness of MI, HUYI. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of MI, HUYI (SSN# XXX-XX- 5762) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover Card, the original creditor of the indebtedness of MI, HUYI set forth above, pursuant to a valid purchase agreement.

7. I affirm that MI, HUYI is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of MI, HUYI.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this /5 day of October, 2007.

_____
Notary Public

My Commission Expires:

Ref#:  410099

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 _11_

PLAINTIFF'S
EXHIBIT

# DISCOVER FINANCIAL SERVICES CARD

## CASHBACK BONUS®
### TERMS AND CONDITIONS

The Cashback Bonus Terms and Conditions are not a part of the Cardmember Agreement.

Cashback Bonus³ is an amount denominated in dollars and cents which may be earned by Discover Card Cardmembers by using their Discover Card for purchases. Cashback Bonus is earned for cash advances or balance transfers. Cashback Bonus is subject to change without notice, and is subject to these terms and conditions and is subject to change without notice. Cashback Bonus is subject to disqualification prior to being awarded in the circumstances described below.

Cashback Bonus is calculated based on an annual period corresponding to the Cardmember's anniversary year. The first anniversary year begins on the date the Card is issued and ends on the last day of the twelfth monthly billing period which follows. Each successive anniversary year is the approximate one-year period comprised of the next twelve monthly billing periods.

The amount of Cashback Bonus is calculated by multiplying each purchase by:

- .25% (.0025), if the purchase is part of the first $1,000 in purchases during the anniversary year.
- .50% (.0050), if the purchase is part of the second $1,000 in purchases during the anniversary year.
- .75% (.0075), if the purchase is part of the third $1,000 in purchases during the anniversary year.
- 1.0% (.01), if the purchase is part of the purchases in excess of $3,000 during the anniversary year.

The total of such calculations for each anniversary year is the amount of Cashback Bonus which will be awarded as described below. The calculation begins again with the beginning of each anniversary year. The Cardmember's monthly billing statement will show the amount of Cashback Bonus and total purchases through the date of its statement for each anniversary year.

Cashback Bonus³ is awarded shortly after each anniversary year. The exact method of awarding may change from year to year, but the Cardmember

will have the opportunity to receive the Cashback Bonus in a cash equivalent (i.e., check or credit to the Cardmember's Discover Card Account). As part of the award method, the Cardmember may have the opportunity to make an election or to exercise a choice as to the manner in which to receive Cashback Bonus to be awarded or the award method, the Cardmember may have the opportunity to make an election or to exercise a choice on a timely basis may result in the disqualification of the Cashback Bonus award or the default options or in the disqualification of the Cashback Bonus award. It is the Cardmember's responsibility to notify Discover Card in the event a Cashback Bonus award is not received for any reason.

Cardmembers have no right to accrued but unawarded Cashback Bonus amounts; if an Account is closed for any reason prior to the anniversary date, any accrued Cashback Bonus will be forfeited.

Presently, Cashback Bonus is awarded by means of (i) a credit to Account, if the amount is less than $2.00 and (ii) a check mailed to the Cardmember (by either first class or third class mail), if the amount is $2.00 or greater.

Cashback Bonus is awarded to Cardmembers in good standing, at the time of the award, the award may, at the option of Discover Card, have their Cashback Bonus applied automatically as a credit to their Account.

In the event a Card is lost or stolen, the amount of Cashback Bonus, the amount of qualifying purchases and the anniversary date from the old Account are transferred to the new Account.

Discover Card reserves the right to make appropriate adjustments to Cashback Bonus amounts in respect of Account activity (e.g., a credit to an Account in respect of a prior purchase will result in a reduction of Cashback Bonus).

CB50REV.95

---

# ALLSTATE LIFE INSURANCE COMPANY
Home Office - Northbrook, Illinois

## CERTIFICATE OF INSURANCE

Allstate Life Insurance Company (herein called "Allstate") has issued Master Policy No. 1401563 to Greenwood Trust Company (herein called "Policyholder") which provides Accidental Death Insurance for tarepaying passenger when fare is charged in advance, and not as a pilot or crew member. The aircraft must be provided and operated by a duly licensed common carrier for regular passenger service.

### FLIGHT ACCIDENTAL DEATH INSURANCE

Allstate will pay the applicable Accidental Death benefit amounts for Injury sustained by an Insured Person while occupying an aircraft as a

#### BENEFIT AMOUNT

Accidental Death Benefit when Insured Person's full air fare is charged in advance to the Discover Card Account: $500,000.

### DEFINITIONS

"Insured Person" means a Discover Cardmember in good standing, and the following dependents of the cardmember: the spouse if the cardmember is a resident of the same household; and each unmarried child, including stepchildren and adopted children, not more than 19 years of age (23 if a full-time student), who is dependent upon the cardmember for support and maintenance. In no event will the same person qualify as an Insured Person under more than one Discover Card. Coverage for any handicapped child will not terminate solely by reaching the limiting age. Coverage will continue if the child is and continues to be both (1) incapable of self-sustaining employment because of mental retardation or physical handicap and (2) chiefly dependent upon the cardmember for support and maintenance.

"Injury or Injured" means bodily injury caused by an accident occurring while the insurance is in force for the Insured Person and which injury results, within 365 days of the accident, directly and independently of all other causes, in death.

"Occupying" means riding in or upon or entering into or alighting from.

### EXCLUSIONS

Accidental Death Benefits are not payable for deaths caused by:

1. suicide while sane or insane; or
2. declared or undeclared war or any act thereof.

### TERMINATION OF COVERAGE

The insurance on each Insured Person will automatically terminate at 12:01 a.m. on the date that they no longer fulfill the requirement of an Insured Person as defined, or upon termination of the Master Policy. Termination shall be without prejudice to any claim originating prior to the effective date of termination.

### GENERAL PROVISIONS

BENEFICIARY: Unless otherwise specified by the Cardmember, any sum due under the policy in force for the Insured Person and which injury for loss of life of an Insured Person will be paid

---

**EXHIBIT**

**MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be the higher whole dollar amount of any amount past due and the minimum monthly payment. The minimum monthly payment each month will be the greater of $10.00 or an amount equal to 1/30th of the New Balance, rounded to the next higher whole dollar amount. However, if the New Balance is less than $10, the minimum monthly payment will be the amount of the New Balance. You can pay ahead. The Minimum Payment Due for each monthly billing period will be reduced by the amount you paid in excess of the Minimum Payment Due in any of the three previous monthly billing periods, less any portion of the excess already used to reduce payments. However, there will be no reduction if you have exceeded your credit limit; or you have paid the entire New Balance shown on your billing statement. There will also be no reduction if your Account is not current, has not generally been paid in an acceptable manner or is otherwise not in good standing.

**CREDIT BALANCES.** We will refund any credit balance within seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing periods.

**BALANCE TRANSFERS.** We may periodically offer you the opportunity to transfer balances from other credit card accounts to your Account. Each offer will contain an initial special rate, which will be the Annual Percentage Rate that will apply to transferred balances for the time period specified in the offer. After the expiration of this time period, the Annual Percentage Rate that applies

for purchases will apply to transferred balances. Balance transfers subject to the initial special rate are referred to as special rate balance transfers; balance transfers for which the initial special rate has expired are referred to as purchase rate balance transfers.

Each offer will contain an expiration date. If you attempt to transfer balances by means of a check after the expiration date, we will treat that transaction as a cash advance. We will treat balance transfers attempted by means of a coupon after the expiration date, will not make balance transfers when

**PERIODIC FINANCE CHARGES.** Except as explained below, Periodic Finance Charges are imposed on purchases, cash advances and balance transfers from the date the transaction occurs to the date of repayment. If the transaction is posted to your Account after the close of the billing period in which it occurs, we will treat the transaction as having occurred on the first day of the billing period in which it is posted to your Account. We will assess Periodic Finance Charges as follows:

(1) Current Billing Period

Periodic Finance Charges are imposed for the current billing period on purchases, cash advances and balance transfers unless you paid, by the Payment Due Date, the New Balance shown on your previous billing statement. We compute Periodic Finance Charges each day by multiplying your daily balances of purchases, cash advances and balance transfers by the applicable Daily Periodic Rates. Only special rate balance transfers are included in the daily balance of balance transfers; purchase rate balance transfers are included in the

daily balance of purchases. At the end of the billing period, we add up the results from the current billing period we also subtract from the daily balance those balance transfers that become purchase rate balance transfers for the Periodic Finance Charges for the billing period.

For purchases, the daily balance is calculated on each day by first adding the following to the previous day's daily balance: purchases made that day, fees charged that day (with the exception of Transaction Fee Finance Charges) and Periodic Finance Charges charged on the previous day's daily balance; and by then subtracting any credits and payments that are applied against the balance of purchases and purchase rate balance transfers on that day.

For cash advances, the daily balance is calculated on each day by first adding the following to the previous day's daily balance: cash advances made that day, the Transaction Fee Finance Charges for cash advances made that day, and Periodic Finance Charges charged on the previous day's daily balance; and by then subtracting any credits and payments that are applied against the balance of cash advances on that day.

For balance transfers, the daily balance is calculated on each day by first adding the following to the previous day's daily balance: cash advances made that day, and Periodic Finance Charges charged on the previous day's daily balance; and by then subtracting any credits and payments that are applied against the balance of balance

transfers on that day. On the first day of the billing period we also subtract from the current billing period the daily balance those balance transfers that become purchase rate balance transfers on that day.

(2) Previous Billing Period

Periodic Finance Charges are imposed for the previous billing period on purchases, cash advances and balance transfers unless Periodic Finance Charges were already imposed for that billing period, or you paid the New Balance shown on your previous billing statement by the Payment Due Date. To compute these charges, we use the same method of calculation that we use in calculating the Periodic Finance Charges for the current billing period, as described above, except that the applicable Daily Periodic Rates are applied to daily balances of purchases, cash advances and balance transfers for each day of the previous billing period. These daily balances are also computed as described above, with the "previous day's daily balance" considered to have been zero on the first day of the billing period.

(3) Daily Periodic Rates and Annual Percentage Rates

The Daily Periodic Rates applicable to purchases and cash advances for the current billing period and the previous billing period are based on the Annual Percentage Rate in effect for each billing period as determined below. The Daily Periodic Rates for each billing period are 1/365th of the Annual Percentage Rates in effect for the billing period. The Annual



EXHIBIT D

Percentage Rate for purchases may be changed based on changes in the rate level for which you qualify, as explained below.

The Annual Percentage Rates are determined in part by the Prime Rate. For purposes of this Agreement, the Prime Rate is the highest rate of interest listed as the "prime rate" in the money rates section of The Wall Street Journal on the last business day of the month. When the Prime Rate changes, the Annual Percentage Rates will change beginning on the first day of the first billing period which begins in the calendar month following the change in the Prime Rate. Increases in the Prime Rate may cause the Daily Periodic Rates, qualified purchases for the preceding 1: billing periods. You will qualify for th Standard Rate if total qualified pur chase are less than $1000.00, and th Best Rate if total qualified purchase Periodic Finance Charges and Minimum Payment Due each month to increase. The Prime Rate is merely a pricing index and does not represent the lowest, or best interest rate available to a borrower at any particular bank at any given time.

We may have offered you an introductory rate on purchases. The introductory rate is the fixed Annual Percentage Rate that will apply to purchases for the time period specified in the offer. After expiration of this time period, the Annual Percentage Rate for purchases will be as described below.

The two Annual Percentage Rates that generally apply to purchases are the Best Rate and the Standard Rate. The rate level for which you qualify is based on the total amount of purchases that you make during an annual period, as explained below. Purchases which compose this annual total are sometimes referred to as qualified purchases. We make certain appropriate adjustments to qualified purchases in respect of account activity (e.g., a credit issued for a returned purchase).

You will qualify for and receive the Best Rate until your first Anniversary Date subject to Subsection (6) below. We refer to the date that is the last day of the twelfth billing period after your Account was opened, and each annual anniversary of that date, as your Anniversary Date. On each Anniversary Date subject to Subsection (6) below, we will determine your rate level based on total $1000.00 or more. The new rate leve will apply to purchases (including th outstanding purchase balance) beginning on the next day and through you next Anniversary Date, subject t Subsection (6) below.

The Best Rate is an ANNUAL PERCENT AGE RATE of Prime Rate plus 0. percentage points, with a minimum o 12.9%. The Standard Rate is an ANNUA PERCENTAGE RATE of the Prime Rate pl 8.9 percentage points, with a minimum' 19.8%. The Daily Periodic Rates and cc responding Annual Percentage Rates i effect on the date this Agreement is f nished to you are set forth in the enclose "Additional Disclosure" or card carrier.

## 5) Annual Percentage Rate for Cash Advances

The ANNUAL PERCENTAGE RATE for cash advances, subject to Subsection (6) below, is the Prime Rate plus 8.9 percentage points, with a minimum of 19.8%. The Daily Periodic Rate and corresponding Annual Percentage Rate in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

## 6) Rate Disqualification

If as of the end of any billing period, including a billing period ending on an Anniversary Date, you have failed to make the Minimum Payment Due by the Payment Due Date in that billing period, and you failed to make the Minimum Payment Due by the Payment Due Date in the preceding billing period, you will be disqualified for the rates described in Subsections (4) and (5) above. If this occurs, your ANNUAL PERCENTAGE RATE for purchases and cash advances will change to the Prime Rate plus 13.9 percentage points, with a minimum of 19.8%. This rate level will apply to your Account (including outstanding balances) beginning on the next day and through your next Anniversary Date. However, if at the time you are subject to an introductory rate or a special rate balance transfer rate, the rate on the balances subject to the introductory rate or the special rate balance transfer rate will not change until the expiration of the introductory or special rate balance transfer rate period.

The Daily Periodic Rate and corresponding Annual Percentage Rate in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

## (7) Annual Percentage Rate for Balance Transfers

The Daily Periodic Rate and corresponding Annual Percentage Rate in effect for special rate balance transfers will be set forth in the offer from us under which you make the balance transfer. As indicated in the Balance Transfers Section above, purchase rate balance transfers will be subject to the Daily Periodic Rate and corresponding Annual Percentage Rate that apply to purchases. If you received an offer prior to your receipt of this Agreement, the Daily Periodic Rates and Annual Percentage Rates in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

TRANSACTION FEE FINANCE CHARGES. We will charge you a Transaction Fee Finance Charge of 2.5% of the amount of each cash advance. There is a minimum Transaction Fee FINANCE CHARGE of $2.00 and no maximum Transaction Fee FINANCE CHARGE. The imposition of Transaction Fee Finance Charges may result in an Annual Percentage Rate for cash advances that is higher than the nominal Annual Percentage Rate. All forms of cash advances, including the use of Discover Card checks, regardless of the purpose for which used, are subject to Transaction Fee Finance Charges. To obtain the total Finance Charge on cash advances for each billing period, we add any Transaction Fee Finance Charge for the billing period charged under this section to any Periodic Finance Charge

EXHIBIT R

DISCOVER FINANCIAL SERVICES CARD

**EXHIBIT**

to the spouse of the Cardmember, if living, otherwise;

1. equally to the then living lawful children of the Cardmember including stepchildren and adopted children, if any, otherwise;

2. equally to the Cardmember's parents or parent then living, otherwise;

3. to the estate of the Cardmember.

CHANGE OF BENEFICIARY: The Cardmember may change the beneficiary at any time by writing to Allstate. Once the change is recorded by Allstate it will take effect as of the day the request was signed, subject to any claim payment made before such recording. The consent of the beneficiary is not needed for the change.

HOW TO REPORT A CLAIM: Written notice of claim must be given to Allstate at its Home Office within six months after the occurrence of any loss covered by the Policy, or as soon as reasonably possible.

CLAIM FORMS: Once Allstate receives written notice of a claim, it will send forms for filing proof of loss. If these forms are not sent to the claimant within 15 days after Allstate receives notice, the proof of loss requirements will be met, by giving Allstate written proof of the occurrence, and cause of the loss within the time stated in the Proof of Loss Provision.

PROOF OF LOSS: Written proof of loss must be furnished to Allstate within nine months after the date of loss. If this is not reasonably possible, Allstate may not deny the claim if the proof is furnished as soon as reasonably possible, but not later than one year from the time required, unless the claimant was legally incapable of doing so.

PAYMENT OF CLAIM: Benefits payable for loss under the policy will be paid immediately upon receipt of due written proof of loss. If any benefit under this policy is payable to an Insured Person's estate or to a person who is a minor or is otherwise not competent to give a valid release, Allstate may pay part of the benefit (up to $1,000) to any blood relative of the Insured Person.

Any payment made in good faith shall fully discharge Allstate to the extent of such payment.

LEGAL ACTION: Suit for benefits under the policy cannot be brought sooner than 60 days after Allstate received written proof of loss as required, and no such action may be initiated after three years from the time written proof of loss is required.

CONFORMITY WITH STATE LAWS: Any provision of the policy which, on its effective date, is in conflict with any law to which it is subject, is amended to conform to the minimum requirements of such law.

AUTOPSY: Allstate at its own expense shall have the right and opportunity to make an autopsy where it is not forbidden by law.

ALLSTATE LIFE INSURANCE COMPANY

Michael P. Duncan
Secretary

Louis G. Lower,
President

---

DISCOVER FINANCIAL SERVICES CARD

## Your Billing Rights
## KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper at the address listed on your bill for Billing Errors. While we investigate your question, you believe there is an error. If you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

- your name and account number.
- the dollar amount of the suspected error.
- describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

2. Your Rights and Our Responsibilities After We Receive Your Written Notice

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

3. Special Rule for Credit Card Purchases

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the goods or services. There are two limitations on this right:

(a) you must have made the purchase in your home state (or if not within your home state, within 100 miles of your current mailing address); and

(b) the purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the goods or services.

841REX.10/2

# APPENDIX 10

1210V5

**Time of Request:** Friday, June 06, 2008  12:31:20 EST
**Client ID/Project Name:** 21513
**Number of Lines:** 6871
**Job Number:**     1842:96732194

Research Information

**Service:**    FOCUS(TM) Feature
**Print Request:** All Documents 1-1000
**Source:** IL Public Records, Combined
**Search Terms:** Elite Recovery Ser! and not ("district court" or  garnishment or
   foreclosure)

**Focus Terms:** Elite Recovery Ser! and not ("district court" or  garnishment or
   foreclosure) and date(geq (06/04/2007) and leq (06/06/2008))

**Send to:**  MILLER, CASSANDRA
          EDELMAN COMBS & LATTURNER
          120 S LA SALLE ST FL 18
          CHICAGO, IL 60603-3593

1. ABERNATHY,RENEE Y, 06M1151034, CIVIL JUDGMENT, 08/14/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER

2. ABERNATHY; RENEE Y, et al., 06M1 0151034, 8/14/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC

3. ADAMOWSKI,HENRY Sr, 07M1218832, CIVIL JUDGMENT, 01/17/2008, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER

4. ADAMOWSKI; HENRY, 07M1 0218832, 1/17/2008, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC

5. ADAMS;GERALDINE, 07SC 0006227, 9/7/2007, JUDGMENT, WILL COUNTY, ILLINOIS
ELITE RECOVERY SERVICE

6. ADAMS,GERALDINE, 07SC006227, SMALL CLAIMS JUDGMENT, 07/26/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

7. ADETOLA; OLABODE S, 07M1 0151709, 7/23/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC          HOUSEHOLD BANK

8. AGUILERA;JUANITA, 07SC 0006241, 9/7/2007, JUDGMENT, WILL COUNTY, ILLINOIS
ELITE RECOVERY SERVICE

9. AGUILERA,JUANITA, 07SC006241, SMALL CLAIMS JUDGMENT, 07/26/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

10. AHMAD; KOUSAY M, 07M1 0178094, 1/31/2008, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES          HOUSEHOLD RENAISSANCE

11. AHSAN,ADNAN, 06M1200382, CIVIL JUDGMENT, 08/21/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER

12. ALLEN; ROSETTA, 07M1 0178092, 1/31/2008, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT

ELITE RECOVERY SERVICES          BANK OF MARIN

13. ALONSO,FELIPE, 07M1163869, CIVIL JUDGMENT, 11/19/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER

14. ALONSO; FELIPE, 07M1 0163869, 11/19/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
ELITE RECOVERY SERVICES INC

15. ANDERSON,ROBIN M, 07SC476, SMALL CLAIMS JUDGMENT, 07/25/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

16. ANDERSON,KAWANNA, 07M1140481, CIVIL JUDGMENT, 11/20/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER

17. ANDERSON;ALAN J, 07SC 0005489, 9/5/2007, JUDGMENT, LAKE COUNTY, ILLINOIS
ELITE RECOVERY SERVICES

18. ANDERSON; KAWANNA, 07M1 0140481, 11/20/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC

19. ANDERSON; WILLIAM, 06M1 0202489, 3/18/2008, VACATED JUDGMENT, COOK COUNTY, ILLINOIS -
1ST MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC
2/8/2007

20. ANDREWS; DANA R, 07M1 0169628, 3/19/2008, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES          HOUSEHOLD BANK

21. ARTIS,MAURICE A, 06M1203636, CIVIL JUDGMENT, 04/01/2008, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER

22. ATEKINS,VALERIE D, 07M1163868, CIVIL JUDGMENT, 01/14/2008, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER

23. ATIEH;RANA M, 07SC 0004109, 6/22/2007, JUDGMENT, WILL COUNTY, ILLINOIS
ELITE RECOVERY SERVICE

24. ATKINS; VALERIE D, et al., 07M1 0163868, 1/14/2008, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES

25. AUSTIN; ROCHELLE, 06M1 0148692, 6/14/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC

26. AVIERITEI,MIRCEA, 07SC006484, SMALL CLAIMS JUDGMENT, 08/09/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES ET AL

27. BAKER; OMAR, 07M1 0151715, 2/11/2008, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC        HOUSEHOLD BANK

28. BALCAZAR,ESTELA, 07M1135071, CIVIL JUDGMENT, 10/03/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER

29. BALL; EARMON A, 07M1 0140397, 6/26/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC

30. BALL,EARMON A Jr, 07M1140397, CIVIL JUDGMENT, 06/26/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER

31. BANKS,CASSANDRA, 07M1171435, CIVIL JUDGMENT, 09/04/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER

32. BANKS; CASSANDRA, 07M1 0171435, 9/4/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC

33. BANTZ,TINA L, 07LM9, CIVIL JUDGMENT, 12/28/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INCAS

34. BARAJAS,JULIO, 07SC3710, SMALL CLAIMS JUDGMENT, 06/13/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

35. BARAJAS;JULIO, 07SC 0003710, 6/13/2007, JUDGMENT, DUPAGE COUNTY, ILLINOIS
ELITE RECOVERY SERVICES INC

976. TOLBERT; GLORIA, et al., 07M1 0198866, 4/30/2008, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES          HOUSEHOLD BANK


977. TOMAS;CHRISTINA, 07SC 0006239, 11/9/2007, JUDGMENT, WILL COUNTY, ILLINOIS
ELITE RECOVERY SERVICE


978. TOMAS,CHRISTINA, 07SC006239, SMALL CLAIMS JUDGMENT, 07/26/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC


979. TOOLOOZE,AARON J, 2007SC2265, SMALL CLAIMS JUDGMENT, 09/28/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES


980. TOOLOOZE;AARON J, 07SC 0002265, 9/28/2007, JUDGMENT, ROCK ISLAND COUNTY, ILLINOIS
ELITE RECOVERY SERVICES INC


981. TORAN;JOHN D, 07SC 0004371, 6/29/2007, JUDGMENT, WILL COUNTY, ILLINOIS
ELITE RECOVERY SERVICE


982. TRAN; LOC, 07M1 0139012, 12/24/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC


983. TRASS; SAMUEL A, 07M1 0138327, 6/19/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC


984. TRASS,SAMUEL A, 07M1138327, CIVIL JUDGMENT, 06/19/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER


985. TRIVITT,DEBORAH A, 07SC211, SMALL CLAIMS JUDGMENT, 08/28/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC


986. TURNER; CRAIG D, 06M1 0141697, 6/26/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC


987. TURNER,CRAIG D, 06M1141697, CIVIL JUDGMENT, 06/26/2007, IL JUDGMENTS AND LIENS

ELITE RECOVERY SER

988. USELTON,KATHERINE, 07M1161147, CIVIL JUDGMENT, 07/31/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER

989. USELTON; KATHERINE M, et al., 07M1 0161147, 7/31/2007, JUDGMENT, COOK COUNTY, ILLINOIS -
1ST MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC

990. VADEBONCOEUR; SYLVIA M, 07M1 0198373, 4/16/2008, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES        HOUSEHOLD     UICI     AFCA

991. VANCE; JERRY, 07M1 0151744, 7/23/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
ELITE RECOVERY SERVICES INC        HOUSEHOLD BANK

992. VANDEE,PAM L, 07SC2911, SMALL CLAIMS JUDGMENT, 07/05/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

993. VARGAS; DAVID L, 07M1 0198383, 5/7/2008, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
ELITE RECOVERY SERVICES        HOUSEHOLD BANK

994. VECELLIO,CHARLES, 07SC826, SMALL CLAIMS JUDGMENT, 08/20/2007, IL JUDGMENTS AND LIENS
ELITE RECOVERY SERVICES INC

995. VECELLIO;CHARLES, 07SC 0000826, 8/20/2007, JUDGMENT, VERMILION COUNTY, ILLINOIS
ELITE RECOVERY SERVICES

996. VIEZCA;MACARIO, 07SC 0005413, 12/13/2007, JUDGMENT, WILL COUNTY, ILLINOIS
ELITE RECOVERY SERVICES INC

997. VILLARREAL;ROBERTO, 07SC 0007553, 3/19/2008, JUDGMENT, LAKE COUNTY, ILLINOIS
ELITE RECOVERY SERVICES

998. VITACCO;SHARON, 07SC 0005992, 9/6/2007, JUDGMENT, DUPAGE COUNTY, ILLINOIS
ELITE RECOVERY SERVICES INC

999. WASHINGTON,TERRENC, 07M1127089, CIVIL JUDGMENT, 01/03/2008, IL JUDGMENTS AND LIENS
ELITE RECOVERY SER


1000. WASHINGTON; TERRENCE, 07M1 0127089, 1/3/2008, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
ELITE RECOVERY SERVICES INC

# APPENDIX 11

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BYRON GLENN WILLIS, | ) | |
| individually and on behalf of the class | ) | |
| defined herein, | ) | |
| | ) | 08 C 3238 |
| Plaintiff, | ) | Judge Kendall |
| | ) | Magistrate Judge Mason |
| vs. | ) | |
| | ) | |
| ELITE RECOVERY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF DANIEL A. EDELMAN**

Daniel A. Edelman declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the following statements are true:

1.      Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, and Michelle R. Teggelaar and 9 associates.

2.      **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School.  From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases).  In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982.  From the end of 1985 he has been in private practice in downtown Chicago.  Virtually all of his practice involves litigation on behalf of consumers, mostly through class actions.  He is the co-author of Rosmarin & Edelman, Consumer Class Action Manual (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of Payday Loans:  Big Interest Rates and Little Regulation, 11 Loy.Consumer L.Rptr. 174 (1999); author of Consumer Fraud and Insurance Claims, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," Ohio Consumer Law (1995 ed.); co-author of Fair Debt Collection:  The Need for Private Enforcement, 7 Loy.Consumer L.Rptr. 89 (1995); author of An Overview of The Fair Debt Collection Practices Act, in Financial Services Litigation, Practicing Law Institute (1999); co-author of Residential Mortgage Litigation, in Financial Services Litigation, Practicing Law Institute (1996); author of Automobile Leasing:  Problems and Solutions, 7 Loy.Consumer L.Rptr. 14 (1994); author of Current Trends in Residential Mortgage Litigation, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); author of Applicability of Illinois Consumer

1

Fraud Act in Favor of Out-of-State Consumers, 8 Loy.Consumer L.Rptr. 27 (1996); co-author of Illinois Consumer Law (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, Attorney Liability Under the Fair Debt Collection Practices Act (Chicago Bar Ass'n 1996); author of The Fair Debt Collection Practices Act:  Recent Developments, 8 Loy.Consumer L. Rptr. 303 (1996); author of Second Mortgage Frauds, Nat'l Consumer Rights Litigation Conference 67 (Oct. 19-20, 1992); and author of Compulsory Arbitration of Consumer Disputes, Nat'l Consumer Rights Litigation Conference 54, 67 (1994).   He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Court for the District of Arizona, United States District Court for the District of Connecticut, and the Supreme Court of Illinois.  He is a member of the Northern District of Illinois trial bar.

      **3.**      **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School.  She formerly supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law.  She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991.  Decisions in which she was involved prior to joining the firm include:  Johnson v. Heckler, 607 F.Supp. 875 (N.D.Ill. 1984), and 100 F.R.D. 70 (N.D. Ill. 1983); Sanders v. Shephard, 185 Ill.App.3d 719, 541 N.E.2d 1150 (1st Dist. 1989); Maller v. Cohen, 176 Ill.App.3d 987, 531 N.E.2d 1029 (1st Dist. 1988); Wright v. Department of Labor, 166 Ill.App.3d 438, 519 N.E.2d 1054 (1st Dist. 1988); Barron v. Ward, 165 Ill.App.3d 653, 517 N.E.2d 591 (1st Dist. 1987); City of Chicago v. Leviton, 137 Ill.App.3d 126, 484 N.E.2d 438 (1st Dist. 1985); Jude v. Morrissey, 117 Ill.App.3d 782, 454 N.E.2d 24 (1st Dist. 1983).  She is a member of the Northern District of Illinois trial bar.

      **4.**      **James O. Latturner** is a 1962 graduate of the University of Chicago Law School.  Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma.  From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions.  His publications include Chapter 8 ("Defendants") in Federal Practice Manual for Legal Services Attorneys (M. Masinter, Ed., National Legal Aid and Defender Association 1989); Governmental Tort Immunity in Illinois, 55 Ill.B.J. 29 (1966); Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations, 2 Loy.Consumer L.Rep. 64 (1990), and Illinois Consumer Law (Chicago Bar Ass'n 1996).  He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience.  He has argued some 30 appeals, including two cases in the United States Supreme Court and two in the Illinois Supreme Court.  Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers.  He is a member of the Northern District of Illinois trial bar.

5.    **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). She has been with the firm since her graduation and has participated in many of the cases described below. **Reported Cases.** Williams v. Chartwell Financial Services, LTD, 204 F.3d 748 (7th Cir. 2000); Hillenbrand v. Meyer Medical Group, 682 N.E.2d 101 (Ill.1st Dist. 1997), 720 N.E.2d 287 (Ill.1st Dist. 1999); Bessette v. Avco Fin. Servs., 230 F.3d 439 (1st Cir. 2000); Large v. Conseco Fin. Servicing Co., 292 F.3d 49 (1st Cir. 2002);; Carbajal v. Capital One, 219 F.R.D. 437 (N.D.Ill. 2004); Russo v. B&B Catering, 209 F.Supp.2d 857 (N.D.IL 2002); Garcia v. Village of Bensenville, 2002 U.S.Dist. LEXIS 3803 (N.D.Ill.); Romaker v. Crossland Mtg. Co., 1996 U.S.Dist. LEXIS 6490 (N.D.IL); Mount v. LaSalle Bank Lake View, 926 F.Supp. 759 (N.D.Ill 1996). She is a member of the Northern District of Illinois trial bar.

6.    **Michelle R. Teggelaar** is a graduate of the University of Illinois (B.A., 1993) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D., with honors, 1997). **Reported Cases:** Johnson v. Revenue Management, Inc., 169 F.3d 1057 (7th Cir.1999); Hernandez v. Attention, LLC, 429 F. Supp. 2d 912 (N.D. Ill. 2005); Coelho v. Park Ridge Oldsmobile, Inc., 247 F. Supp. 2d 1004 (N.D. Ill. 2003); Dominguez v. Alliance Mtge., Co., 226 F. Supp. 2d 907 (N.D. Ill. 2002); Watson v. CBSK Financial Group, Inc., 197 F. Supp. 2d 1118 (N.D. Ill. 2002); Van Jackson v. Check 'N Go of Illinois, Inc. 123 F. Supp. 2d 1085 (N.D. Ill. 2000), Van Jackson v. Check 'N Go of Illinois, Inc., 123 F. Supp. 2d 1079, Van Jackson v. Check 'N Go of Illinois, Inc., 114 F. Supp. 2d 731 (N.D. Ill. 2000); Van Jackson v. Check 'N Go of Illinois, Inc., 193 F.R.D. 544 (N.D. Ill. 2000); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Veillard v. Mednick, 24 F. Supp. 2d 863 (N.D. Ill.1998); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998), Vines v. Sands, 188 F.R.D. 203 (N.D. Ill. 1999), Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572 (Ind. 2001); Binder v. Atlantic Credit and Finance, Inc., 2007 U.S. Dist. LEXIS 11483 (S.D. Ind. 2007); Carroll v. Butterfield Heath Care, Inc., 2003 WL 22462604 (N.D. Ill. 2003); Payton v. New Century Mtge., Inc., 2003 WL 22349118 (N.D. Ill. 2003); Seidat v. Allied Interstate, Inc., 2003 WL 2146825 (N.D. Ill. 2003) (Report and Recommendation); Michalowski v. Flagstar Bank, FSB, 2002 WL 112905 (N.D. Ill. 2002); Bigalke v. Creditrust Corp., 2001 WL 1098047 (N.D. Ill 2001) (Report and Recommendation); Donnelly v. Illini Cash Advance, 2000 WL 1161076 (N.D. Ill. 2000); Mitchem v. Paycheck Advance Express, 2000 WL 419992 (N.D. Ill 2000); Pinkett v. Moolah Loan Co., 1999 WL 1080596 (N.D. Ill. 1999); Farley v. Diversified Collection Serv., 1999 WL 965496 (N.D. Ill. 1999); Davis v. Commercial Check Control, 1999 WL 965496 (N.D. Ill. 1999); Sledge v. Sands, 1999 WL 261745 (N.D. Ill. 1999); Slater v. Credit Sciences, Inc., 1998 WL 341631 (N.D. Ill. 1998); Slater v. Credit Sciences, Inc., 1998 WL 299803 (N.D. Ill. 1998).

7.    **Associates**

a.    **Francis R. Greene** is a graduate of Johns Hopkins University (B.A., with honors, May 1984), Rutgers University (Ph.D., October 1991), and Northwestern University Law School (J.D., 2000). **Reported Cases:** Johnson v. Thomas, 342 Ill. App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); Jolly v. Shapiro & Kreisman, 237 F. Supp. 2d 888 (N.D. Ill.

2002); <u>Parker v. 1-800 Bar None, a Financial Corp., Inc.</u> 2002 WL 215530 (N.D. Ill. 2002); <u>Jiang v. Allstate Ins. Co.</u> (199 F.R.D. 267); <u>Hill v. AMOCO Oil Co.</u> 2003 WL 262424, 2001 WL 293628 (N.D. Ill. 2003)**;** <u>Roquet v. Arthur Anderson LLP</u> 2002 WL 1900768 (N.D. Ill. 2002); <u>White v. Financial Credit, Corp.</u> 2001 WL 1665386 (N.D. Ill.); <u>Ransom v. Gurnee Volkswagen</u> 2001 WL 1241297 (N.D. Ill. 2001) and 2002 WL 449703 (N.D. Ill 2002); <u>Doxie v. Impac Funding Corp.</u> 2002 WL 31045387 (N.D. Ill. 2002); <u>Levin v. Kluever & Platt LLC</u> 2003 WL 22757763 and 2003 WL 22757764 (N.D. Ill. 2003); <u>Pleasant v. Risk Management Alternatives</u> 2003 WL 22175390 (N.D. Ill. 2003); <u>Jenkins v. Mercantile Mortgage</u> 231 F. Supp. 2d 737 (N.D. Ill. 2002); <u>Hobson v. Lincoln Ins. Agency, Inc.</u> 2001 WL 55528, 2001 WL 648958 (N.D. Ill. 2001), <u>Anderson v. Lincoln Ins. Agency</u> 2003 WL 291928, <u>Hobson v. Lincoln Ins. Agency</u> 2003 WL 338161 (N.D. Ill. 2003); <u>Handy v. Anchor Mortgage Corp.</u>, 464 F.3d 760 (7th Cir. 2006). He is a member of the Northern District of Illinois trial bar.

   **b.**  **Julie Clark** (neé Cobolovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** <u>Qualkenbush v. Harris Trust & Savings Bank</u> 219 F. Supp.2d 935 (N.D. Ill.,2002); <u>Covington-McIntosh v. Mount Glenwood Memory Gardens</u> 2002 WL 31369747 (N.D.I ll.,2002), 2003 WL 22359626 (N.D. Ill. 2003); <u>Ballard Nursing Center, Inc.  v. GF Healthcare Products, Inc.</u>, 2007 U.S. Dist. LEXIS 84425 (N.D. Ill. Nov. 14, 2007); <u>Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.</u>, No. 1-07-0684, 2007 Ill. App. LEXIS 1194 (Ill. App. 1st Dist. Nov. 13, 2007).

   **c.**  **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum  laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** <u>Clark v. Experian Info. Solutions, Inc.</u>, 2004 U.S. Dist. LEXIS 28324 (D.S.C. Jan. 14, 2004); <u>DeFrancesco v. First Horizon Home Loan Corp.</u>, 2006 U.S. Dist. LEXIS 80718 (S.D. Ill. Nov. 2, 2006); <u>Jeppesen v. New Century Mortgage Corp.</u>, 2006 U.S. Dist. LEXIS 84035 (N.D. Ind. Nov. 17, 2006); <u>Benedia v. Super Fair Cellular, Inc.</u>, 2007 U.S. Dist. LEXIS 71911 (N.D. Ill. Sept. 26, 2007).

   **d.**  **Thomas E. Soule** is a graduate of Stanford University (B.A., 2000), and the University of Wisconsin Law School (J.D., 2003). **Reported Cases:** <u>Murray v. Sunrise Chevrolet, Inc.</u>, 441 F.Supp.2d 940 (N.D. Ill. 2006); <u>Iosello v. Leiblys, Inc.</u>, 502 F. Supp.2d 782 (N.D. Ill. 2007); <u>Claffey v. River Oaks Hyundai, Inc.</u>, 486 F. Supp.2d 776 (N.D. Ill. 2007).

   **e.**  **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (J.D. *magna cum laude* 2006). **Reported Cases:** <u>Pietras v. Sentry Ins. Co.</u>, 513 F. Supp.2d 983 (N.D. Ill. 2007); <u>Hernandez v. Midland Credit Mgmt.</u>, 2007 U.S. Dist. LEXIS 16054 (N.D. Ill. Sept. 25, 2007); <u>Balogun v. Midland Credit Mgmt.</u>, 2007 U.S. Dist. LEXIS 74845 (S.D. Ind. Oct. 5, 2007).

   **f.**  **Tiffany N. Hardy** (admitted NY, DC, IL) is a graduate of Tuskegee University (B.A. 1998) and Syracuse University College of Law (J.D.2001).

     **g.**    **Zachary Jacobs** is a graduate of the University of South Dakota (B.S. 2002) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D. 2007).

     **h.**    **Rupali Shah** is a graduate of the University of Chicago (B.A. 2004) and University of Illinois College of Law (J.D. 2007).

     **i.**    **Michael J. Aschenbrener** is a graduate of the University of Minnesota (B.A. 2001) and the Chicago-Kent College of Law, Illinois Institute of Technology (J.D. May 2007).

     **8.**    The firm also has 15 legal assistants, as well as other support staff.

     **9.**    Since its inception, the firm has recovered more than $500 million for consumers.

     **10.**    The types of cases handled by the firm are illustrated by the following:

     **11.**    **Mortgage charges and servicing practices:**  The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices.  These include MDL-899, In re Mortgage Escrow Deposit Litigation, and MDL-1604, In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, as well as the Fairbanks mortgage servicing litigation.  Decisions in the firm's mortgage cases include: <u>Christakos v. Intercounty Title Co.</u>, 196 F.R.D. 496 (N.D.Ill. 2000); <u>Johnstone v. Bank of America, N.A.</u>, 173 F.Supp.2d 809 (N.D.Ill. 2001); <u>Leon v. Washington Mut. Bank, F.A.</u>, 164 F.Supp.2d 1034 (N.D.Ill. 2001);  <u>Williamson v. Advanta Mortg. Corp.</u>, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); <u>McDonald v. Washington Mut. Bank, F.A.</u>, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); <u>Metmor Financial, Inc. v. Eighth Judicial District Court</u>, No. 23848 (Nev.Sup.Ct., Apr. 27, 1993); <u>GMAC Mtge. Corp. v. Stapleton</u>, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); <u>Leff v. Olympic Fed. S. & L. Ass'n</u>, 1986 WL 10636 (N.D.Ill. 1986); <u>Aitken v. Fleet Mtge. Corp.</u>, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. 1991), and 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); <u>Poindexter v. National Mtge. Corp.</u>, 1991 U.S.Dist. LEXIS 19643 (N.D.Ill., Dec. 23, 1991), later opinion, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); <u>Sanders v. Lincoln Service Corp.</u>, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. 1993); <u>Robinson v. Empire of America Realty Credit Corp.</u>, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); <u>In re Mortgage Escrow Deposit Litigation</u>, M.D.L. 899, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 8, 1994); <u>Greenberg v. Republic Federal S. & L. Ass'n</u>, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

     **12.**    The recoveries in the escrow overcharge cases alone are over $250 million.  <u>Leff</u> was the seminal case on mortgage escrow overcharges.

     **13.**    The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

**14.** **Bankruptcy:** The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. Conley v. Sears, Roebuck, 1:97cv11149 (D.Mass); Fisher v. Lechmere Inc., 1:97cv3065, (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. Bessette v. Avco Financial Services, 230 F.3d 439 (1st Cir. 2000).

**15.** **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

**a.** Hidden finance charges resulting from pass-on of discounts on auto purchases. Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 1998 U.S. App. LEXIS 22663 (7th Cir. 1998).

**b.** Misrepresentation of amounts disbursed for extended warranties. Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 1998 U.S.App. LEXIS 16434 (7th Cir. 1998); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); Slawson v. Currie Motors Lincoln Mercury, Inc., 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 5, 1995); Cirone-Shadow v. Union Nissan, Inc., 1995 U.S.Dist. LEXIS 1379 (N.D.Ill., Feb. 3, 1995), later opinion, 1995 U.S.Dist. LEXIS 5232 (N.D.Ill., April 20, 1995) (same); Chandler v. Southwest Jeep-Eagle, Inc., 1995 U.S. Dist. LEXIS 8212 (N.D.Ill., June 8, 1995); Shields v. Lefta, Inc., 1995 U.S.Dist. LEXIS 7807 (N.D.Ill., June 5, 1995).

**c.** Spot delivery. Janikowski v. Lynch Ford, Inc., 1999 U.S. Dist. LEXIS 3524 (N.D.Ill., March 11, 1999); Diaz v. Westgate Lincoln Mercury, Inc., 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. 1994); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

**d.** Force placed insurance. Bermudez v. First of America Bank Champion, N.A., 860 F.Supp. 580 (N.D.Ill. 1994); Travis v. Boulevard Bank, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill., 1995); Moore v. Fidelity Financial Services, Inc., 884 F. Supp. 288 (N.D.Ill. 1995).

**e.** Improper obligation of cosigners. Lee v. Nationwide Cassell, 174 Ill.2d 540, 675 N.E.2d 599 (1996); Taylor v. Trans Acceptance Corp., 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995).

**f.** Evasion of FTC holder rule. Brown v. LaSalle Northwest Nat'l Bank, 148 F.R.D. 584 (N.D.Ill. 1993), 820 F.Supp. 1078 (N.D.Ill. 1993), and 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

**16.** These cases also had a substantial effect on industry practices. The

warranty cases, such as <u>Grimaldi</u>, <u>Gibson</u>, <u>Slawson</u>, <u>Cirone-Shadow</u>, <u>Chandler</u>, and <u>Shields</u>, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

      **17.**    **Predatory lending practices:**  The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, mostly as class actions. <u>Livingston v. Fast Cash USA, Inc.</u>, 753 N.E.2d 572 (Ind. Sup. Ct. 2001);  <u>Williams v. Chartwell Fin. Servs.</u>, 204 F.3d 748 (7th Cir. 2000); <u>Parker v. 1-800 Bar None, a Financial Corp., Inc.</u>, 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb 12, 2002); <u>Gilkey v. Central Clearing Co.</u>, 202 F.R.D. 515 (E.D.Mich. 2001);  <u>Van Jackson v. Check 'N Go of Ill., Inc.</u>, 114 F.Supp.2d 731 (N.D.Ill. 2000), later opinion, 193 F.R.D. 544 (N.D.Ill 2000), 123 F.Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F.Supp.2d 1085 (N.D.Ill. 2000); <u>Henry v. Cash Today, Inc.</u>, 199 F.R.D. 566 (S.D.Tex. 2000); <u>Donnelly v. Illini Cash Advance, Inc.</u>, 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); <u>Jones v. Kunin</u>, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); <u>Davis v. Cash for Payday</u>, 193 F.R.D. 518 (N.D.Ill. 2000); <u>Reese v. Hammer Fin. Corp.</u>, 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); <u>Pinkett v. Moolah Loan Co.</u>, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); <u>Gutierrez v. Devon Fin. Servs.</u>, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); <u>Vance v. National Benefit Ass'n</u>, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

      **18.**    **Other consumer credit issues:**  The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

      **a.**    Phony nonfiling insurance.  <u>Edwards v. Your Credit Inc.</u>, 148 F.3d 427, 1998 U.S. App. LEXIS 16818 (5th Cir. 1998); <u>Adams v. Plaza Finance Co.</u>, 1999 U.S. App. LEXIS 1052 (7th Cir., January 27, 1999); <u>Johnson v. Aronson Furniture Co.</u>, 1997 U.S. Dist. LEXIS 3979 (N.D. Ill., March 31, 1997).

      **b.**    The McCarran Ferguson Act exemption.  <u>Autry v. Northwest Premium Services, Inc.</u>, 144 F.3d 1037, 1998 U.S. App. LEXIS 9564 (7th Cir. 1998).

      **c.**    Loan flipping.  <u>Emery v. American General</u>, 71 F.3d 1343 (7th Cir. 1995).  <u>Emery</u> limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

      **d.**    Home improvement financing practices.  <u>Fidelity Financial Services, Inc. v. Hicks</u>, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; <u>Heastie v. Community Bank of Greater Peoria</u>, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).  <u>Heastie</u> granted

certification of a class of over 6,000 in a home improvement fraud case.

        **e.**    Arbitration clauses.  <u>Wrightson v. ITT Financial Services</u>, 617 So.2d 334 (Fla. 1st DCA 1993).

        **f.**    Insurance packing.  <u>Elliott v. ITT Corp.</u>, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

        **19.**    **Automobile leases:**  The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include <u>Lundquist v. Security Pacific Automotive Financial Services Corp.</u>, Civ. No. 5:91-754 (TGFD) (D.Conn.), <u>aff'd</u>, 993 F.2d 11 (2d Cir. 1993); <u>Kedziora v. Citicorp Nat'l Services, Inc.</u>, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); <u>Johnson v. Steven Sims Subaru and Subaru Leasing</u>, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); <u>McCarthy v. PNC Credit Corp.</u>, 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); <u>Kinsella v. Midland Credit Mgmt., Inc.</u>, 1992 U.S.Dist. LEXIS 1405, 1992 WL 26908 (N.D.Ill. 1992); <u>Highsmith v. Chrysler Credit Corp.</u>, 18 F.3d 434 (7th Cir. 1994); <u>Black v. Mitsubishi Motors Credit of America, Inc.</u>, 1994 U.S.Dist. LEXIS 11158 (N.D.Ill., August 10, 1994); <u>Simon v. World Omni Leasing Inc.</u>, 146 F.R.D. 197 (S.D.Ala. 1992).  Settlements in such cases include <u>Shepherd v. Volvo Finance North America, Inc.</u>, 1-93-CV-971 (N.D.Ga.)($8 million benefit); <u>McCarthy v. PNC Credit Corp.</u>, 291 CV 00854 PCD (D.Conn.); <u>Lynch Leasing Co. v. Moore</u>, 90 CH 876 (Circuit Court of Cook County, Illinois) (class in auto lease case was certified for litigation purposes, partial summary judgment was entered, and case was then settled); <u>Blank v. Nissan Motor Acceptance Corp.</u>, 91 L 8516 (Circuit Court of Cook County, Illinois); <u>Mortimer v. Toyota Motor Credit Co.</u>, 91 L 18043 (Circuit Court of Cook County, Illinois); <u>Duffy v. Security Pacific Automotive Financial Services, Inc.</u>, 93-729 IEG (BTM) (S.D.Cal., April 28, 1994).

        **20.**    <u>Lundquist</u> and <u>Highsmith</u> are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act.  As a result of the <u>Lundquist</u> case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

        **21.**    **Collection practices:**  The firm has brought a number of cases under the Fair Debt Collection Practices Act, both class and individual.  Decisions in these cases include: <u>Jenkins v. Heintz</u>, 25 F.3d 536 (7th Cir. 1994), aff'd 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); <u>Johnson v. Revenue Management Corp.</u>, 169 F.3d 1057, 1999 U.S. App. LEXIS 3142 (7th Cir. 1999); <u>Keele v. Wexler & Wexler</u>, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. 1995) (merits), aff'd, 149 F.3d 589, 1998 U.S.App. LEXIS 15029 (7th Cir. 1998); <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338, 1997 U.S.App. LEXIS 5000 (7th Cir., Mar. 17, 1997); <u>Maguire v. Citicorp Retail Services, Inc.</u>, 147

F.3d 232, 1998 U.S.App. LEXIS 16112 (2d Cir. 1998); <u>Young v. Citicorp Retail Services, Inc.,</u> 1998 U.S.App. LEXIS 20268 (2d Cir. 1998); <u>Charles v. Lundgren & Assocs., P.C.,</u> 119 F.3d 739, 1997 U.S. App. LEXIS 16786 (9th Cir. 1997); <u>Avila v. Rubin,</u> 84 F.3d 222 (7th Cir. 1996), aff'g <u>Avila v. Van Ru Credit Corp.,</u> 1995 U.S.Dist. LEXIS 461 (N.D.Ill., Jan. 10, 1995), later opinion, 1995 U.S.Dist. LEXIS 1502 (N.D.Ill., Feb. 6, 1995), later opinion, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 14, 1995); <u>Tolentino v. Friedman,</u> 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); <u>Blakemore v. Pekay,</u> 895 F.Supp.972 (N.D.Ill. 1995); <u>Oglesby v. Rotche,</u> 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 4, 1993), <u>later opinion,</u> 1994 U.S.Dist. LEXIS 4866 (N.D.Ill., April 15, 1994); <u>Laws v. Cheslock,</u> 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999);<u>Davis v. Commercial Check Control, Inc.,</u> 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); <u>Hoffman v. Partners in Collections, Inc.,</u> 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); <u>Vaughn v. CSC Credit Services, Inc.,</u> 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); <u>Beasley v. Blatt,</u> 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 14, 1994); <u>Taylor v. Fink,</u> 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); <u>Gordon v. Fink,</u> 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); <u>Brujis v. Shaw,</u> 876 F.Supp. 198 (N.D.Ill. 1995). Settlements in such cases include <u>Boddie v. Meyer,</u> 93 C 2975 (N.D.Ill.); and <u>Cramer v. First of America Bank Corporation,</u> 93 C 3189 (N.D.Ill.).

22. <u>Jenkins v. Heintz</u> is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. I argued it before the Supreme Court and Seventh Circuit. <u>Avila v. Rubin</u> is a leading decision on phony "attorney letters."

23. **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, primarily as class actions. One line of cases alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA. Important decisions in this area include: <u>Cole v. U.S. Capital, Inc.,</u> 389 F.3d 719 (7th Cir. 2004), <u>Murray v. GMAC Mortgage Corp.,</u> 434 F.3d 948 (7th Cir. 2006); <u>Perry v. First National Bank,</u> 459 F.3d 816 (7th Cir. 2006); <u>Murray v. Sunrise Chevrolet, Inc.,</u> 441 F. Supp.2d 940 (N.D. Ill. 2006); <u>Murray v. GMAC Mortgage Corp.,</u> 05 C 1229, _____ F.Supp.2d _____, 2007 U.S. Dist. LEXIS 26726 (N.D.Ill. April 10, 2007); <u>Shellman v. Countrywide Home Loans, Inc.,</u> 1:05-CV-234-TS, 2007 U.S. Dist. LEXIS 27491 (N.D.Ind., April 12, 2007); <u>In re Ocean Bank,</u> 06 C 3515, 2007 U.S. Dist. LEXIS 28973 (N.D.Ill., March 16, 2007), later opinion, 2007 U.S. Dist. LEXIS 29443 (N.D. Ill., Apr. 9, 2007); <u>Asbury v. People's Choice Home Loan, Inc.,</u> 05 C 5483, 2007 U.S. Dist. LEXIS 17654 (N.D.Ill., March 12, 2007); <u>Claffey v. River Oaks Hyundai, Inc.,</u> 238 F.R.D. 464 (N.D.Ill. 2006); <u>Murray v. IndyMac Bank, FSB,</u> 461 F.Supp.2d 645 (N.D.Ill. 2006); <u>Kudlicki v. Capital One Auto Finance, Inc.,</u> 2006 U.S. Dist. LEXIS 81103 (N.D. Ill., Nov. 2, 2006); <u>Thomas v. Capital One Auto Finance, Inc.,</u> 2006 U.S. Dist. LEXIS 81358 (N.D. Ill., Oct. 24, 2006); <u>Pavone v. Aegis Lending Corp.,</u> 2006 U.S. Dist. LEXIS 62157 (N.D. Ill., Aug. 31, 2006); <u>Murray v. E*Trade Financial Corp.,</u> 2006 U.S. Dist. LEXIS 53945 (N.D. Ill., July 19, 2006); <u>Bonner v. Home 123 Corp.,</u> 2006 U.S. Dist. LEXIS 37922 (N.D. Ind., May 25, 2006); <u>Murray v. Sunrise Chevrolet , Inc.,</u> 2006 U.S. Dist. LEXIS 19626 (N.D. Ill., Mar. 30, 2006); and <u>Murray v. Finance America, LLC,</u> 2006 U.S. Dist. LEXIS 7349 (N.D. Ill., Jan 5, 2006). More

than 15 such cases have been settled on a classwide basis.

24. **Class action procedure:** Important decisions include <u>Crawford v. Equifax Payment Services, Inc.</u>, 201 F.3d 877 (7th Cir. 2000); <u>Blair v. Equifax Check Services, Inc.</u>, 181 F.3d 832 (7th Cir. 1999); <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338, 344 (7th Cir. 1997); and <u>Gordon v. Boden</u>, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

25. **Landlord-tenant:** The firm has brought a number of class actions against landlords for various matters including failing to pay interest on security deposits or commingling security deposits, breach of the warranty of habitability, improper late charges, and various violations of the CRLTO. Reported decisions include: <u>Wang v. Williams,</u>343 Ill. App. 3d 495; 797 N.E.2d 179 (5ᵗʰ Dist. 2003); <u>Onni v. Apartment Management and Investment Co.</u>, 344 Ill. App. 3d 1099; 801 N.E.2d 586 (2d Dist. 2003) (case challenging improper late charges, which later settled on a class basis for $200,000); <u>Dickson v. West Koke Mill Village P'Ship</u>, 329 Ill.App.3d 341 (4ᵗʰ Dist. 2002). Illustrative cases include: <u>Hale v. East Lake Management & Developmental Corp., et al.</u>, 00 CH 16139, in the Cook County Circuit Court, Judge Madden granted class certification for tenants who had not been paid their security deposit interest after the end of each twelve month rental period. The East Lake case later settled on a classwide basis for over $400,000.

26. Some of the other reported decisions in our cases include: <u>Elder v. Coronet Ins. Co.</u>, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); <u>Smith v. Keycorp Mtge., Inc.</u>, 151 Bankr. 870 (N.D.Ill. 1992); <u>Gordon v. Boden</u>, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); <u>Armstrong v. Edelson</u>, 718 F.Supp. 1372 (N.D.Ill. 1989); <u>Newman v. 1st 1440 Investment, Inc.</u>, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. 1993); <u>Mountain States Tel. & Tel. Co. v. District Court</u>, 778 P.2d 667 (Colo. 1989); <u>Disher v. Fulgoni</u>, 124 Ill.App.3d 257, 464 N.E.2d 639, 643 (1st Dist. 1984); <u>Harman v. Lyphomed, Inc.</u>, 122 F.R.D. 522 (N.D.Ill. 1988); <u>Haslam v. Lefta, Inc.</u>, 1992 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); <u>Source One Mortgage Services Corp. v. Jones</u>, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994).

27. Gordon v. Boden is the first decision approving "fluid recovery" in an Illinois class action. <u>Elder v. Coronet Insurance</u> held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

s/ Daniel A. Edelman
Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

10