**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BYRON GLENN WILLIS, | ) | |
| individually and on behalf of the class | ) | |
| defined herein, | ) | |
| | ) | 08 C 3238 |
| Plaintiff, | ) | Judge Kendall |
| | ) | Magistrate Judge Mason |
| vs. | ) | |
| | ) | |
| ELITE RECOVERY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE CLAIMS

### INTRODUCTION

1.      Plaintiff Byron Glenn Willis brings this action to secure redress from unlawful credit and collection practices engaged in by defendant Elite Recovery Services, Inc. Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), and state law.

2.      The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

### VENUE AND JURISDICTION

3.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331 (general federal question), 28 U.S.C. §1337 (interstate commerce), and 28 U.S.C. §1367 (supplemental jurisdiction).

4.      Venue and personal jurisdiction in this District are proper because:

a.      Defendant's collection communications and activities impacted plaintiff within this District;

1

b.    Defendant does business within this District.

## PARTIES

5.    Plaintiff Byron Glenn Willis is an individual who resides in the Northern District of Illinois.

6.    Defendant Elite Recovery Services, Inc. is a New York corporation that does business in Illinois.  Its registered agent and office are Lexis Document Solutions, Inc., 801 Adlai Stevenson Dr., Springfield, IL 62703.

7.    Defendant Elite Recovery Services, Inc. is engaged in the business of purchasing charged-off consumer debts and enforcing the debts against the consumers.

8.    Defendant Elite Recovery Services, Inc. pays an average of less than ten cents on the dollar for the debts it purchases.

9.    Defendant Elite Recovery Services, Inc. regularly uses the mails and telephones in conducting its business.

10.    Defendant Elite Recovery Services, Inc. has been the plaintiff in more than 1,000 lawsuits filed in Illinois seeking to collect consumer debts.

11.    Because the purported obligations were originally owed to other entities and were charged off prior to purchase, Elite Recovery Services, Inc. is a "debt collector" as defined in the FDCPA.

12.    Defendant Elite Recovery Services, Inc. is a licensee under the Illinois Collection Agency Act.

## FACTS

13.    On or about April 4, 2008, Elite Recovery Services, Inc. filed suit against plaintiff Byron Glenn Willis in the Circuit Court of Cook County to collect a purported credit card debt which was alleged to have been originally owed to Household/Orchard Bank.  The complaint in Case No. 08 M1 127418 is attached as Appendix 1.  It consisted of a one page complaint, a one page affidavit (Exhibit A), an unsigned, purported contract (Exhibit B), and a one page purported

2

"statement of account" (<u>Exhibit C</u>).

14.    The alleged debt was incurred for personal, family or household purposes.

15.    No assignment conveying the purported debt to Elite Recovery Services, Inc. was attached to the complaint.

16.    The "statement of account" (<u>Appendix 1</u>, <u>Exhibit C</u>) was made to appear as if it had been sent to the putative debtor prior to suit, so as to give rise to an account stated.  It bore a date prior to the filing of suit, contained a direction to "Mail Payments To" a specified address, and contained a notice required by the Fair Debt Collection Practices Act on correspondence, but not pleadings.

17.    In fact, the "statement of account" (<u>Appendix 1</u>, <u>Exhibit C</u>) was not sent to Byron Glenn Willis prior to the filing of suit, but was only an exhibit to the complaint.

18.    The purpose and effect of the "statement of account" is to falsely represent that the document was sent to the putative debtor and not objected to.

<b><u>USE OF "STATEMENT OF ACCOUNT"</u></b>

19.    The "statement of account" is a document regularly attached by Elite Recovery Services, Inc. to collection complaints.  Other examples are attached as <u>Appendices 2-9</u>.

20.    On information and belief, the "statement of account" is only provided to putative debtors as an exhibit to the complaint and not mailed to putative debtors.

<b><u>COUNT I – FDCPA – CLASS CLAIM</u></b>

21.    Plaintiff incorporates paragraphs 1-20.

<b><u>VIOLATION ALLEGED</u></b>

22.    The "statement of account" violates the FDCPA as constituting a false representation or means in connection with the collection of any debt (§1692e), a false representation of the "character" of any debt (§1692e(2)(A)), and use of any false representation to collect or attempt to collect any debt or to obtain information concerning a consumer (§1692e(10)).

3

## CLASS ALLEGATIONS

23.     Plaintiff brings this claim on behalf of a class, consisting of (a) all natural persons with Illinois addresses (b) with respect to whom a lawsuit was filed with Elite Recovery Services, Inc. as plaintiff (c) attaching a "statement of account" in the form in Appendix 1, Exhibit C, (d) which document was not sent to the addressee prior to the filing of suit (e) where the lawsuit was filed or served during a period beginning on a date one year prior to the filing of this action and ending 20 days after the filing of this action.

24.     The class is so numerous that joinder is impracticable.

25.     There are more than 100 natural persons with Illinois addresses with respect to whom a lawsuit was filed with Elite Recovery Services, Inc. as plaintiff, attaching a "statement of account" in the form in Appendix 1, Exhibit C, which document was not sent to the addressee prior to the filing of suit, where the lawsuit was filed or served during a period beginning on a date one year prior to the filing of this action and ending 20 days after the filing of this action.

26.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.  The predominant common question is whether the "statement of account" violates the FDCPA.

27.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

28.     Plaintiff will fairly and adequately represent the interests of the class members.  Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

29.     A class action is superior to other alternative methods of adjudicating this dispute.  Individual cases are not economically feasible.  Congress intended that the class action be a principal enforcement mechanism for the FDCPA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff

and the class and against defendant for:

    a.    Statutory damages;

    b.    Attorney's fees, litigation expenses and costs of suit;

    c.    Such other or further relief as the Court deems proper.

## COUNT II – FDCPA – INDIVIDUAL CLAIM

30.    Plaintiff incorporates paragraphs 1-20.

31.    Elite Recovery Services, Inc. is a "collection agency" as defined in the Illinois Collection Agency Act, 225 ILCS 425/1 et seq., as amended effective January 1, 2008.

32.    Effective January 1, 2008, "collection agency" in 225 ILCS 425/2 was defined to include "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  (Emphasis added).

33.    In addition, 225 ILCS 425/2.02 now defines "collection agency" to mean "any person, association, partnership, corporation, or legal entity who, for compensation, either contingent or otherwise, or for other valuable consideration, offers services to collect an alleged delinquent debt."

34.    Finally, 225 ILCS 425/3 was amended to provide that "[a] person, association, partnership, corporation, or other legal entity acts as a collection agency when he or it: ... (d) [b]uys accounts, bills or other indebtedness and engages in collecting the same...." Previously 225 ILCS 425/3 had provided that one was a "collection agency" if one "[b]uys accounts, bills or other indebtedness with recourse and engages in collecting the same...."

35.    The purpose of the additions and changes to the Illinois Collection Agency Act quoted above was to bring within the definitions entities such as Elite Recovery Services, Inc. which purchase delinquent debts for their own account and collect them.

36.    There is a substantial problem with debt buyers suing on debts that they do not own and have no right to sue on.

37.    There are multiple reported cases in which debtors have been subjected to

litigation because they "settled" with A and then B claimed to own the debt.  <u>Smith v. Mallick</u>, 514 F.3d 48 (D.C. Cir. 2008) (commercial debt purchased and resold by debt buyer, debt buyer [possibly fraudulently] settles debt it no longer owns, settlement held binding because notice of assignment not given, but obligor subjected to litigation as result).  <u>See also</u>, <u>Miller v. Wolpoff & Abramson, LLP</u>, 1:06-CV-207-TS, 2008 U.S. Dist. LEXIS 12283 (N.D. Ind., Feb. 19, 2008), where a debtor complained he had been sued twice on the same debt; <u>Dornhecker v. Ameritech Corp.</u>, 99 F. Supp. 2d 918, 923 (N.D. Ill. 2000), where the debtor claimed he settled with one agency and was then dunned by a second for the same debt, and <u>Northwest Diversified, Inc. v. Desai</u>, 353 Ill.App.3d 378, 818 N.E.2d 753 (1st Dist. 2004), where a commercial debtor paid the creditor only to be subjected to a levy by a purported debt buyer.

38.    In <u>Wood v. M&J Recovery LLC</u>, CV 05-5564, 2007 U.S. Dist. LEXIS 24157 (E.D. N.Y., Apr. 2, 2007), a debtor complained of multiple collection efforts by various debt buyers and collectors on the same debt, and the defendants asserted claims against one another disputing the ownership of the portfolio involved.  Shekinah alleged that it sold a portfolio to NLRS, that NLRS was unable to pay, that the sale agreement was modified so that NLRS would only obtain 1/5 of the portfolio, and that the 1/5 did not include the plaintiff's debt.  Portfolio claimed that it and not Shekinah is the rightful owner of the portfolio.

39.    In <u>Associates Financial Services Co. v. Bowman, Heintz, Boscia & Vician, P.C.</u>, IP 99-1725-C-M/S, 2001 U.S. Dist. LEXIS 7874, *9-12 (S.D. Ind., Apr. 25, 2001), later opinion, 2004 U.S. Dist. LEXIS 6520 (S.D. Ind., Mar. 31, 2004), allegations were made that a creditor had continued to collect accounts allegedly sold to a debt buyer.

40.    Courts have also dismissed numerous collection and foreclosure lawsuits filed in the names of entities that did not own the purported debts.  <u>In re Foreclosure Cases</u>, 1:07CV2282 and 14 others, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 (N.D. Ohio, Oct. 31, 2007); <u>In re Foreclosure Cases</u>, 07-cv-166 and 18 others, 2007 U.S. Dist. LEXIS 90812 (S.D. Ohio, Nov. 27, 2007); <u>In re Foreclosure Cases</u>, 521 F. Supp. 2d 650 (S.D. Ohio 2007); <u>In re</u>

6

Foreclosure Cases, 07-cv-166 and 14 others, 2007 U.S. Dist. LEXIS 95673 (S.D. Ohio, Dec. 27,

2007); NovaStar Mortgage, Inc. v. Riley, 3:07-CV-397, 2007 U.S. Dist. LEXIS 86216 (S.D. Ohio,

Nov. 21, 2007); NovaStar Mortgage, Inc. v. Grooms, 3:07-CV-395, 2007 U.S. Dist. LEXIS 86214

(S.D. Ohio, Nov. 21, 2007); HSBC Bank USA v. Rayford, 3:07-CV-428, 2007 U.S. Dist. LEXIS

86215 (S.D. Ohio, Nov. 21, 2007); Everhome Mtge. Co. v. Rowland, 2008 Ohio 1282; 2008 Ohio

App. LEXIS 1103 (Ohio App., Mar. 20, 2008) (judgment for plaintiff reversed because it failed to

introduce assignment or establish that it was the holder of the note and mortgage); Deutsche Bank

National Trust Co. v. Castellanos, 277/07, 2008 NY Slip Op 50033U; 18 Misc. 3d 1115A; 2008

N.Y. Misc. LEXIS 44; 239 N.Y.L.J. 16 (Kings Co., N.Y., Sup. Ct., Jan. 14, 2008); HSBC Bank

USA, N.A. v. Valentin, 15968/07, 2008 NY Slip Op 50164U; 14 Misc. 3d 1123A; 2008 N.Y.

Misc. LEXIS 229 (Kings Co., N.Y., Sup. Ct., Jan. 30, 2008); HSBC Bank USA, N.A. v. Cherry,

21335/07, 2007 NY Slip Op 52378U; 18 Misc. 3d 1102A; 2007 N.Y. Misc. LEXIS 8279; 239

N.Y.L.J. 2 (Kings Co., N.Y. Sup. Ct., Dec. 17, 2007); Deutsche Bank National Trust Co. v.

Castellanos, 15 Misc. 3d 1134A; 841 N.Y.S.2d 819 (Kings. Co., N.Y., Sup. Ct. 2007).

      41.    Debt buyer American Acceptance filed a lawsuit alleging that a broker of

charged-off debts sold it debts to which it did not have title.  American Acceptance Co. v.

Goldberg, 2:08cv9 (N.D. Ind.).  Another debt buyer, Hudson & Keyse, filed suit alleging that the

same debt broker obtained information about consumer debts owned by Hudson & Keyse and used

the information to try to collect the debts for its own account, even though it didn't own them.

Hudson & Keyse, LLC v. Goldberg & Associates, LLC, 07-81047-civ (S.D. Fla., filed Nov. 5,

2007).  A similar suit, alleging that the broker resold accounts it did not own, was filed by Old

National Bank, Old National Bank v. Goldberg & Associates, 9:08-cv-80078-DMM (S.D. Fla.,

Jan. 24, 2008).  The same debt broker is accused in another complaint of selling 6,521 accounts

totaling about $40 million face value which it did not own.  RMB Holdings, LLC v. Goldberg &

Associates, LLC, 3:07-cv-00406 (E.D. Tenn., filed Oct. 29, 2007).  Other debt buyers have voiced

similar complaints.  "Florida Broker Faces Multiple Lawsuits," Collections & Credit Risk, April

2008, p. 8.

   42. In a related abuse, debt buyers would "purchase" debts with minimal information about the debtor and then try to "collect" them from anyone with a similar name. In 2004, the Federal Trade Commission shut down a debt buyer called CAMCO headquartered in Illinois. The following is from a press release issued by the FTC in connection with that case:

> ... In papers filed with the court, the agency charged that as much as 80 percent of the money CAMCO collects comes from consumers who never owed the original debt in the first place. Many consumers pay the money to get CAMCO to stop threatening and harassing them, their families, their friends, and their co-workers.
>
> According to the FTC, CAMCO buys old debt lists that frequently contain no documentation about the original debt and in many cases no Social Security Number for the original debtor. CAMCO makes efforts to find people with the same name in the same geographic area and tries to collect the debt from them – whether or not they are the actual debtor. In papers filed with the court, the FTC alleges that CAMCO agents told consumers – even consumers who never owed the money – that they were legally obligated to pay. They told consumers that if they did not pay, CAMCO could have them arrested and jailed, seize their property, garnish their wages, and ruin their credit. All of those threats were false, according to the FTC.... (http://www.ftc.gov/opa/2004/12/camco.htm).

   43. In order to protect Illinois residents against this sort of abuse, the Illinois Collection Agency Act ("ICAA") was amended effective January 1, 2008 to define debt buyers as "collection agencies." This makes applicable the special assignment requirements in ICAA §8b, 225 ILCS 425/8b. Illinois courts had held prior to the amendment that a party that was required to but did not have such an assignment does not have a valid claim and that the defendant in such a case is entitled to judgment. Business Service Bureau, Inc. v. Webster, 298 Ill. App. 3d 257; 698 N.E.2d 702 (4th Dist. 1998).

   44. Section 8b of the ICAA provides:

  **Sec. 8b. An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided:**

   **(a) The assignment is manifested by a written agreement, separate from and in addition to any document intended for the purpose of listing a debt with a collection agency. The document manifesting the assignment shall specifically state and include:**

    **(i) the effective date of the assignment; and**

**(ii) the consideration for the assignment.**

**(b) The consideration for the assignment may be paid or given either before or after the effective date of the assignment. The consideration may be contingent upon the settlement or outcome of litigation and if the claim being assigned has been listed with the collection agency as an account for collection, the consideration for assignment may be the same as the fee for collection.**

**(c) All assignments shall be voluntary and properly executed and acknowledged by the corporate authority or individual transferring title to the collection agency before any action can be taken in the name of the collection agency.**

**(d) No assignment shall be required by any agreement to list a debt with a collection agency as an account for collection.**

**(e) No litigation shall commence in the name of the licensee as plaintiff unless: (i) there is an assignment of the account that satisfies the requirements of this Section and (ii) the licensee is represented by a licensed attorney at law. . . .**

45.    Furthermore, the assignment must be attached to the complaint. Candice Co. v. Ricketts, 281 Ill.App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996).

46.    Finally, the assignee is required "in his or her pleading on oath allege that he or she is the actual bona fide owner thereof, and set forth how and when he or she acquired title...." 735 ILCS 5/2-403(a).

47.    Defendant Elite Recovery Services, Inc. regularly files lawsuits on debts it claims to have purchased without having an assignment that complies with §8b of the Collection Agency Act, and therefore, without a valid claim.

48.    Defendant knows or should know it has no valid claim, but files suit anyway because consumers are unlikely to realize the fact.

49.    The filing and prosecution of collection lawsuits notwithstanding a known defense, in the hope that the consumer will not raise the defense, is both a deceptive collection practice, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10), and an unfair collection practice, in violation of 15 U.S.C. §1692f.

50.    Since Kimber v. Federal Financial Corp., 668 F. Supp. 1480, 1488 (M.D.

9

Ala. 1987), "bringing a lawsuit to which there appears to exist a complete defense" in the hope

that the consumer will not realize it exists and will default or pay has been a violation of the

FDCPA.

51.    Section 1692e provides:

**§ 1692e.    False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)    The false representation of--**

**(A)    the character, amount, or legal status of any debt; . . .**

**(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

52.    Section 1692f provides:

**§ 1692f.    Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

WHEREFORE, the Court should enter judgment in favor of plaintiff and against

defendant for:

(1)    Statutory damages;

(2)    Actual damages;

(3)     Attorney's fees, litigation expenses and costs of suit;

(4)     Such other and further relief as the Court deems proper.

## COUNT III – ILLINOIS COLLECTION AGENCY ACT – INDIVIDUAL CLAIM

53.    Plaintiff incorporates paragraphs 1-20 and 31-52.

54.    Defendant violated 225 ILCS 425/8b by filing suit without an assignment

in the form specified therein.

55.    Defendant violated the following provisions of 225 ILCS 425/9:

**. . .(20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist.        . . .**

56.    A private right of action exists for violation of the ICAA.  <u>Sherman v. Field Clinic</u>, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

57.    Plaintiff was damaged as a result.

WHEREFORE, plaintiff requests that the Court grant the following relief in favor of plaintiff and against defendant:

a.    Compensatory, punitive and nominal damages;

b.    Costs;

c.    Such other and further relief as is appropriate.


s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)


## JURY DEMAND

Plaintiff demands trial by jury.


s/ Daniel A. Edelman
Daniel A. Edelman

11

## <u>NOTICE OF LIEN</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

<u>s/ Daniel A. Edelman</u>
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>CERTIFICATE OF SERVICE</u>

   I, Daniel A. Edelman, hereby certify that on July 17, 2008, I caused the foregoing **Plaintiff's First Amended Complaint – Class Action** to be filed electronically using the Court's CM/ECF system which will send notice to the following:

Todd P. Stelter (tstelter@hinshawlaw.com)
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601
(312) 704-3000
(312) 704-3001 (FAX)


        s/ Daniel A. Edelman
        Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

# APPENDIX 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | | |
|---|---|---|
| ELITE RECOVERY SERVICES S/I/I TO HOUSEHOLD/ORCHARD BANK | ) ) ) | Case No. Contract |
| Plaintiff, | ) ) ) | **08 M 1   127418** |
| vs. | ) ) | Amount Claimed $1,101.77 Plus attorney fees and costs |
| BYRON GLENN WILLIS | ) ) ) | |
| Defendant(s) | ) ) | Return Date: **MAY 0 8 2008** |

### VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO HOUSEHOLD/ORCHARD BANK, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), BYRON GLENN WILLIS   , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) BYRON GLENN WILLIS   , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), BYRON GLENN WILLIS   , HOUSEHOLD/ORCHARD BANK , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $1,101.77, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO HOUSEHOLD/ORCHARD BANK, prays judgment be entered in its favor and against the Defendant(s), BYRON GLENN WILLIS   , in the amount of $1,101.77, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY:_____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
218596

# EXHIBIT A

## AFFIDAVIT

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, HOUSEHOLD/ORCHARD BANK transmitted certain electronic data pertaining to the particulars of the indebtedness of WILLIS, BYRON GLENN. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of WILLIS, BYRON GLENN (SSN# XXX-XX- 8395) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of HOUSEHOLD/ORCHARD BANK, the original creditor of the indebtedness of WILLIS, BYRON GLENN set forth above, pursuant to a valid purchase agreement.

7. I affirm that WILLIS, BYRON GLENN is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of WILLIS, BYRON GLENN.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____

Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this 16th day of January, 2008.

_____
Notary Public

My Commission Expires:

Ref#:  770263

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 11

# EXHIBIT B

# Household Bank®

## CARDMEMBER AGREEMENT AND DISCLOSURE STATEMENT

Please keep this with your important papers.

AG1819 (7/03)

The changes highlighted in blue herein are effective with the first day of your billing cycle that ends in November 2003. These changes will apply to new and existing balances on your Account.

### AGREEMENT TO TERMS AND DEFINITIONS

This Cardmember Agreement and Disclosure Statement, the enclosed document with "Important Information Regarding Your Account", and any amendments to them are collectively the "Agreement" that governs the open end line of credit we have established for you ("your Account"). "Your Account" means the credit card account established for you. "Card" means any credit card issued to you under this Agreement. "Account" or "Card" means any credit card issued to you under this Agreement. You and we are bound by this Agreement from the date of your first transaction. Do not use your Account/borrowing if without paying any fees.

You agree to use your Account only for personal, family, household, or charitable purposes. You agree not to use your Account to make, or facilitate, any business or our affiliate. You agree to pay your Account for valid and lawful transactions. If your Account is used for any other purposes you are responsible for any and may be required to reimburse us and any other MasterCard International incorporated for all resulting amounts and expenses.

### PROMISE TO PAY

You promise to pay according to the terms of this Agreement for all (i) credit we extend to you or to anyone you authorize to use your Account; (ii) Finance Charges that accrue on your Account; and (iii) all other charges, over limit charges, and administrative charges (e.g. for research, attorneys' fees) as provided in this Agreement; and (iv) collection costs and expenses as permitted by applicable law.

If your Account is a joint Account, each joint Accountholder is jointly and individually responsible for all amounts due under this Agreement regardless of any action or other legal proceedings or any agreement that may affect liability between you...

### USING YOUR ACCOUNT

You can access your Account using your Card or by other means approved by us to get cash advances (through an ATM, balance transfers, convenience checks, or other "cash-like" transactions) and purchases of goods and services. Any additional use of your Account will not reduce your balance owed...

### YOUR CREDIT LIMIT

We will advise you of your credit limit, which may change from time to time. You agree not to allow your unpaid balance to exceed your credit limit. Your unpaid balance includes Finance Charges and other charges. We may set a separate credit limit for cash advances, which may be less than your overall credit limit. If you exceed your credit limit you agree to pay us that excess amount immediately. Your unpaid credit may not reflect your payments for...

### MINIMUM PAYMENT

You must pay at least the Minimum Payment by the Payment Due Date. The Payment Due Date will be determined by us, but will be at least 20 days after the close of your billing cycle. You may pay more than the Minimum Payment and may pay the entire amount due (the New Balance) at any time. Your Minimum Payment is the greater of (a) $18 or (b) 3% of the New Balance, plus any past due amount. Your Minimum Payment each billing cycle will be rounded up to the next whole dollar. Your Minimum Payment each billing cycle is equal to the greater of (a) 3.5% of the New Balance, or (b) $18 (or the balance if it is less than $18). At our option, we may add...

### PAYMENT

Each statement you receive from us will identify a Minimum Payment and Current Payment Due. The Minimum Payment is calculated as follows:

(1) If your New Balance is less than $18, your Minimum Payment is the New Balance.

(2) If your New Balance is more than $18, your Minimum Payment is the greater of:
- $18

The Current Payment Due is the sum of:
- your Minimum Payment, and
- the greater of any amount past due, or any overlimit amount.

An overlimit amount is the amount by which your New Balance exceeds your credit limit. Your Minimum Payment and Current Payment Due will be credited up to the nearest dollar, unless doing so will cause the resulting value to exceed...

You must pay at least the Current Payment Due in time to be credited to your Account by the Payment Due Date, and failure to do so constitutes a default of this Agreement. If you do not pay at least the Minimum Payment and any amount past due by the Payment Due Date, you may be assessed a late payment fee. Instructions for making payments are on your billing statement. Payments received by the date and time and in the manner specified in this Agreement by the Payment Due Date, you agree to pay...

### APPLICATION OF PAYMENTS

All payments must be in U.S. dollars. If you pay by mail it must be sent to the address specified on your billing statement. If you pay by a form other than a form we accept, such as a money order or check, it must be in U.S. financial institution. Disposable to us and must be drawn on a U.S. financial institution...

### ANNUAL PERCENTAGE RATES AND PERIODIC RATES

The enclosed document entitled "Important Information Regarding Your Account" indicates on the enclosed document entitled "Important Information Regarding Your Account". We calculate the APR by adding the index to the applicable margin explained on the enclosed document entitled "Important Information Regarding Your Account." We calculate the APR by adding the index to the applicable margin. Different types of transactions may have different APRs. The Daily Periodic Rate is the corresponding APR divided by 365.

### ANNUAL PERCENTAGE RATES AND PERIODIC RATES FOR FIXED RATE ACCOUNTS

The Daily Periodic Rate used to determine your periodic Finance Charges will be a fixed rate. The Annual Percentage Rate ("APR") and corresponding Daily Periodic Rate for the fixed Percentage APR for credit and purchases, balance transfers and cash advances, and the Daily Periodic Rate are indicated in the enclosed document entitled "Important Information Regarding Your Account". Different types of transactions may have different APRs. The Daily Periodic Rate is the corresponding APR divided by 365.

### PROMOTIONAL RATE OFFERS

At our discretion, we may offer you a Promotional Annual Percentage Rate that may be limited. Certain promotional offers may apply to a non-refundable Annual Fee. If your Account is subject to a promotional rate applies may be limited. Certain promotional offers may be subject to Cash Advance Fees. Any promotional rate, the corresponding periodic rate and the period of time during which it is in effect, will be disclosed to you, and the offer will be subject to the terms of the offer and this Agreement.

### MINIMUM FINANCE CHARGE

There will be a Minimum Finance Charge of $2.00 for each billing cycle in which a periodic Finance Charge is payable. Any Minimum Finance Charge in excess of any periodic Finance Charge will increase the actual Annual Percentage Rate on your Account.

### ANNUAL FEE

The enclosed document entitled "Important Information Regarding Your Account" indicates any Annual Fee. If your Account has an Annual Fee, it will be charged to your Account once a year. The Annual Fee will continue to be assessed from time to time. The Annual Fee can provide a non-refundable Annual Fee for each year to access customer service and, for right of the cardmember services provided or made available to you throughout the membership year which including, but is not limited to, the right of the cardmember to access customer service and, for right of the cardmember services provided or made available to you throughout the membership year which including. The amount of disputed charges, and the processing and mailing of the monthly billing statement. You agree that the Annual Fee will be billed to your Account.

### LATE CHARGE/LATE PAYMENT FEE

We will add a late charge on a late payment fee to your Account for each billing cycle you fail to make a Minimum Payment in time to be credited to your Account by the Payment Due Date. This late charge of late payment fee is $35.

Effective with the first day of your billing cycle that ends in November 2003, the immediately preceding LATE CHARGE/LATE PAYMENT FEE paragraph is replaced with the following:

### LATE CHARGE/LATE PAYMENT FEE

We may add a late payment fee to your Account for each billing cycle you fail to pay at least the Minimum Payment, and any amount past due, in time to be credited to your Account by the Payment Due Date. This fee is $35.

### RETURNED CHECK CHARGE/RETURNED PAYMENT FEE

If your Account has a returned check, electronic check, automatic payment deduction, or similar instrument is not honored or is returned unsatisfied by your bank or other financial institution. This fee is $35.

### OVERLIMIT FEE

You agree that any payment returned unsatisfied for any reason may be reapplied. In any type of transaction (i.e., cash advance, purchase, etc), and Finance Charges may be recalculated back to the payment date at the APR being charged for that transaction type.

### OVERLIMIT FEE

We may add an overlimit fee to your Account if your balance exceeds your credit limit at any time during that billing cycle. We may impose this fee even if the overlimit is authorized or in any charges that cause your balance to exceed your credit limit. This fee is $35.

### RESEARCH CHARGE

You agree to pay $7 for each late slip copy you request and $5 for each statement copy you request.

### CHANGE OF TERMS (INCLUDING FINANCE CHARGES)

WE MAY CHANGE OR TERMINATE ALL, OR ANY PART OF THIS AGREEMENT OR ADD NEW TERMS AT ANY TIME, INCLUDING WITHOUT LIMITATION ADDING OR INCREASING FEES, INCREASING YOUR FINANCE PAYMENT OR CHANGING THE RATE OR AMOUNT OF FINANCE CHARGE, OR CHANGING THE METHOD OF COMPUTING THE BALANCE UPON WHICH FINANCE CHARGES ARE ASSESSED. WRITTEN NOTICE WILL BE PROVIDED TO YOU WHEN REQUIRED BY APPLICABLE LAW. UNLESS OTHERWISE STATED, CHANGES APPLY TO BOTH NEW AND OUTSTANDING BALANCES.

### DEFAULT AND TERMINATION OF AGREEMENT

You will be in default under this Agreement if: (a) you fail to make at least the Minimum Payment in time to be credited to your Account by the Payment Due Date, (b) you default in any other provision of this Agreement, (c) you die (d) you...

**CREDIT AUTHORIZATIONS**

**CREDIT CARD RENEWAL**

**CARD CANCELLATION**

**CLOSING YOUR ACCOUNT**

**LIABILITY FOR UNAUTHORIZED USE**

**SECURITY**

**LOST OR STOLEN CREDIT CARD CHECKS**

**CHANGE OF NAME, ADDRESS, TELEPHONE NUMBER OR EMPLOYMENT**

**CREDIT REPORTING**

**FOR VISA ACCOUNTS**

**FOR MASTERCARD ACCOUNTS**

**FOREIGN TRANSACTIONS**

**APPLICABLE LAW**

**ASSIGNMENT OF ACCOUNT**

**CERTAIN PRIVACY PRACTICES**

**INFORMATION SHARING WITH AFFILIATES**

**STOP PAYMENT**

**WAIVER**

**UPDATED FINANCIAL AND OTHER INFORMATION**

**SEVERABILITY**

**ARBITRATION**

**CREDIT REPORTING**

this arbitration agreement or the Agreement. In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this arbitration agreement, this arbitration agreement shall govern. No class actions or joinder or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of you and us.

THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR A JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.

You may contact, obtain the arbitration rules of, or file a Claim with NAF, AAA, or JAMS as follows:

| National Arbitration Forum | American Arbitration Association | JAMS |
|---|---|---|
| P.O. Box 50191 | 1633 Connecticut Ave. NW, 6th Floor | 45 Broadway |
| Minneapolis, MN 55405 | Washington, DC 20009-1054 | New York, NY 10006 |
| www.arb-forum.com | www.adr.org | www.jamsadr.com |
| Code of Procedure | Arbitration Rules for Consumer Disputes (Claims under $10,000) | Financial Services Arbitration Rules and Procedures |
| | Commercial Arbitration Rules (all other claims) | |

## What To Do If There's An Error In Your Bill

**YOUR BILLING RIGHTS -- KEEP THIS NOTICE FOR FUTURE USE**
This notice contains important information about your Account rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.**
If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.

If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone to whom we furnished credit information about you that you have a question about your bill. And we must tell you the name of anyone to whom we gave this information. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned

**SPECIAL RULE FOR CREDIT CARD PURCHASES**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in the state at your current designated address or, if not within the same state, within 100 miles from that address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if you own or operate the merchant, or if we mailed you the advertisement for the property or services.

Household Credit Services, Inc. provides processing services for Household Bank (SB), N.A.

You may write to us at:
Household Bank (SB), N.A.
1111 Town Center Drive
Las Vegas, Nevada 89134
Web Address: www.household.com

Thomas M. Kambe
Executive Vice President
June 1, 2003

MasterCard is a registered mark of MasterCard International, Incorporated.
Visa is a registered mark of Visa International and Visa U.S.A.
©2003 Household Credit Services, Inc.

# EXHIBIT C

*218596*

*06-7536*

```
=================================================================
                    Statement of Account
=================================================================
```

**Original Creditor: HOUSEHOLD/ORCHARD BANK**

```
=================================================================
```

Collections Department: 800-780-6165

Mail Payments to:        ERS
                         PO BOX 3474
                         Buffalo, NY 14240-3474

```
=================================================================
```

ERS Account Number:          770263
Current Statement date:      1/15/2008
Original Account Number:     ████████5197
Placement Balance:           $ 997.25
Interest:                    $104.52

TOTAL AMOUNT DUE:            $1,101.77

```
=================================================================
```

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.

```
=================================================================
           ******Total Amount Due: $1,101.77
=================================================================
```

WILLIS, BYRON GLENN
████████████████



Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474

# APPENDIX 2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| ELITE RECOVERY SERVICES S/I/I TO<br>DISCOVER CARD<br><br>       Plaintiff,<br><br>vs.<br><br>RAE RICHARDSON<br><br>       Defendant(s) | ) Case No.<br>) Contract<br>)<br>)      **08 M 1   1 2 7 7 0 4**<br>)<br>) Amount Claimed $1,695.26<br>) Plus attorney fees and costs<br>)<br>) Return Date:   **MAY 0 8 2008**<br>) |

## VERIFIED COMPLAINT AT LAW

    NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), RAE RICHARDSON , alleges and states as follows:

    1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) RAE RICHARDSON   , and is now the bona fide holder of this claim.

    2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), RAE RICHARDSON   , DISCOVER CARD , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

    3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $1,695.26, as set forth in the attached affidavit.

    4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

    5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

    WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, prays judgment be entered in its favor and against the Defendant(s), RAE RICHARDSON   , in the amount of $1,695.26, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY:_____
          For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
218607

## **AFFIDAVIT**

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover Card transmitted certain electronic data pertaining to the particulars of the indebtedness of RICHARDSON, RAE. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of RICHARDSON, RAE (SSN# XXX-XX- 8603) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover Card, the original creditor of the indebtedness of RICHARDSON, RAE set forth above, pursuant to a valid purchase agreement.

7. I affirm that RICHARDSON, RAE is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of RICHARDSON, RAE.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this 17 day of October, 2007.

_____
Notary Public

My Commission Expires:

    Ref#: 734790

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 11



PLAINTIFF'S EXHIBIT

06-7519

```
===============================================================
                    Statement of Account
===============================================================
Original Creditor: Discover Card
===============================================================
Collections Department: 800-780-6165

Mail Payments to:        ERS
                         PO BOX 3474
                         Buffalo, NY 14240-3474


===============================================================

ERS Account Number:              734790
Current Statement date:          10/10/2007
Original Account Number:         6011007210651377
Placement Balance:               $1551.37
Interest:                        $143.89

TOTAL AMOUNT DUE:                $1,695.26


===============================================================

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.


===============================================================
          ******Total Amount Due: $1,695.26
===============================================================
```

RICHARDSON, RAE
537 QUAIL RUN RD
MATTESON, IL 60443-1337


Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474

**PLAINTIFF'S EXHIBIT**

# APPENDIX 3

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| ELITE RECOVERY SERVICES | ) Case No. |
| S/I/I TO DISCOVER CARD | ) Contract 08 M 1 130 0 5 1 |
| | ) |
| Plaintiff, | ) |
| | ) Amount Claimed $2,480.43 |
| vs. | ) Plus attorney fees and costs |
| | ) |
| KEITH M ROBBINS | ) Return Date: MAY 2 2 2008 |
| | ) |
| Defendant(s) | ) |

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), KEITH M ROBBINS , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) KEITH M ROBBINS , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), KEITH M ROBBINS , DISCOVER CARD , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $2,480.43, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, prays judgment be entered in its favor and against the Defendant(s), KEITH M ROBBINS   , in the amount of $2,480.43, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY: _____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
218699

# **AFFIDAVIT**

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover Card transmitted certain electronic data pertaining to the particulars of the indebtedness of ROBBINS, KEITH M. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of ROBBINS, KEITH M (SSN# XXX-XX- 8464) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover Card, the original creditor of the indebtedness of ROBBINS, KEITH M set forth above, pursuant to a valid purchase agreement.

7. I affirm that ROBBINS, KEITH M is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of ROBBINS, KEITH M.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this 15 day of October, 2007.

_____
Notary Public

My Commission Expires:

Ref#:  492661

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 _11_

**PLAINTIFF'S
EXHIBIT**

```
================================================================
                       Statement of Account
================================================================
Original Creditor: Discover Card
================================================================
Collections Department: 800-780-6165

Mail Payments to:          ERS
                           PO BOX 3474
                           Buffalo, NY 14240-3474


================================================================

ERS Account Number:            492661
Current Statement date:        10/10/2007
Original Account Number:       6011007350643325
Placement Balance:             $2231.24
Interest:                      $249.19

TOTAL AMOUNT DUE:              $2,480.43


================================================================

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.


================================================================
            ******Total Amount Due: $2,480.43
================================================================
```

ROBBINS, KEITH M
420 N WABASH AVE STE 203
CHICAGO, IL 60611-3539


Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474

PLAINTIFF'S
EXHIBIT

**DISCOVER** FINANCIAL SERVICES Card

## CASHBACK BONUS®

### TERMS AND CONDITIONS

The Cashback Bonus Terms and Conditions are not a part of the Cardmember Agreement.

Cashback Bonus® is an amount denominated in dollars and cents which may be earned by Discover Card purchases. Cashback Bonus is not earned for cash advances or balance transfers. Cashback Bonus is subject to these terms and conditions and is subject to change without notice. Cashback Bonus is subject to change without notice, prior to being awarded in the circumstances described below.

Cashback Bonus is calculated based on an annual period corresponding to the Cardmember's anniversary year. The first anniversary year begins on the date the Card is issued and ends on the last day of the twelfth monthly billing period which follows. Each successive anniversary year is the approximate one-year period comprised of the next twelve monthly billing periods.

The amount of Cashback Bonus is calculated by multiplying each purchase by:

1. .25% (.0025), if the purchase is part of the first $1,000 in purchases during the anniversary year.

2. .50% (.0050), if the purchase is part of the second $1,000 on purchases during the anniversary year.

3. .75% (.0075), if the purchase is part of the third $1,000 in purchases during the anniversary year.

4. 1.0% (.01), if the purchase is part of the purchases in excess of $3,000 during the anniversary year.

The total of such calculations for each anniversary year is the amount of Cashback Bonus which will be awarded as described below. The calculation begins again with the beginning of each anniversary year. The Cardmember's monthly billing statement will show the amount of Cashback Bonus and total purchases through the date of its statement for each anniversary year.

will have the opportunity to receive the Cashback Bonus in a cash equivalent (i.e., check or credit to the Cardmember's Discover Card Account). As part of the award method, the Cardmember may have the opportunity to make an election or to exercise a choice as to the manner in which the Cashback Bonus is awarded or the award is deemed. The failure to make such election or choice at a timely basis may result in the exercise of defined options or in the disqualification of the Cashback Bonus award. It is the Cardmember's responsibility to notify Discover Card in the event a Cashback Bonus award is not received for any reason.

Cardmembers have no right to accrued but unawarded Cashback Bonus amounts; if an Account is closed for any reason prior to the anniversary date, any accrued Cashback Bonus will be forfeited.

5. Presently, Cashback Bonus is awarded by means of (i) a credit to Account, if the amount is less than $2.00 and (ii) a check mailed to the Cardmember (by either first class or third class mail), if the amount is $2.00 or greater.

6. Cashback Bonus is awarded to Cardmembers in good standing at the time of the award. Cardmembers who are delinquent at the time of the award may, at the option of Discover Card, have their Cashback Bonus applied automatically as a credit to their Account.

7. In the event a Card is lost or stolen, the amount of Cashback Bonus, the amount of qualifying purchases and the anniversary date from the old Account are transferred to the new Account.

8. Discover Card reserves the right to make appropriate adjustments to Cashback Bonus amounts in respect of Account activity (e.g., a credit to Account in respect of a prior purchase will result in a reduction of Cashback Bonus).

CB80REP 9/5

---

**DISCOVER** FINANCIAL SERVICES Card

## ALLSTATE LIFE INSURANCE COMPANY
Home Office - Northbrook, Illinois

### CERTIFICATE OF INSURANCE

Allstate Life Insurance Company (herein called "Allstate") has issued Master Policy No. 1401363 to Greenwood Trust Company ("Policyholder") which provides certain Accidental Death Insurance for travel Accidental Death Insurance for eligible family members.

### FLIGHT ACCIDENTAL DEATH INSURANCE

Allstate will pay the applicable Accidental Death benefit amounts for Injury sustained by an Insured Person while occupying an aircraft as a farepaying passenger when fare is charged in advance, and not as a pilot or crew member. The aircraft must be provided and operated by a duly licensed common carrier for regular passenger service.

### BENEFIT AMOUNT

Accidental Death Benefit when Insured Person's full air fare is charged in advance to the Discover Card Account: $500,000.

### DEFINITIONS

"Insured Person" means a Discover cardmember in good standing; and the following dependents of the cardmember: the spouse if the cardmember if a resident of the same household; and each unmarried child, including stepchildren and adopted children, not more than 19 years of age (23 if a full-time student), who is dependent upon the cardmember for support and maintenance. In no event will the same person qualify as an Insured Person under more than one Discover Card. Coverage for any handicapped child will not terminate solely by reaching the limiting age. Coverage will continue if the child is and continues to be both (1) incapable of self-sustaining employment because of mental retardation or physical handicap and (2) chiefly dependent upon the cardmember for support and maintenance.

"Occupying" means riding in or upon or entering into of alighting from.

"Injury or injured" means bodily injury caused by an accident occurring while the insurance is in force for the Insured Person and which injury results, within 365 days of the accident, directly and independently of all other causes, in death.

### EXCLUSIONS

Accidental Death Benefits are not payable for deaths caused by:

1. suicide while sane or insane; or

2. declared or undeclared war or any act thereof.

### TERMINATION OF COVERAGE

The insurance on each Insured Person will automatically terminate at 12:01 a.m. on the date that they no longer fulfill the requirements of an Insured Person as defined, or upon termination of the Master Policy. Termination shall be without prejudice to any claim originating prior to the effective date of termination.

### GENERAL PROVISIONS

BENEFICIARY: Unless otherwise specified the Cardmember, any sum due under the policy for loss of life of an Insured Person will be paid

EXHIBIT



**DISCOVER** FINANCIAL SERVICES CARD

INIMUM MONTHLY PAYMENT. The Mini-um Payment Due each month will be the m of any amount past due and the mini-um monthly payment. The minimum onthly payment each month will be the reater of $10.00 or an amount equal to 1/ th of the New Balance, rounded to the next gher whole dollar amount. However, if the ew Balance is less than $10, the minimum onthly payment will be the amount of the ew Balance. You can pay ahead. The Mini-um Payment Due for each monthly billing eriod will be reduced by the amount, you ave paid in excess of the Minimum Payment ue in any of the three previous monthly bill-g periods, less any portion of the excess ready used to reduce payments. However, here will be no reduction if you have ex-eeded your credit limit, or you have paid the ntire New Balance shown on your billing tatement. There will also be no reduction if our Account is not current, has not gener-tily been paid in an acceptable manner or is otherwise not in good standing.

CREDIT BALANCES. We will refund any credit balance within seven business days from receipt of your written request. If you do not request a refund, we will automati-cally refund credit balances greater than $1.00 which remain in your Account after two billing periods.

BALANCE TRANSFERS. We may periodi-cally offer you the opportunity to transfer balances from other credit card accounts to your Account. Each offer will contain an initial special rate, which will be the Annual Percentage Rate that will apply to transferred balances for the time period specified in the offer. After the expiration of this time pe-riod, the Annual Percentage Rate that applies

for purchases will apply to transferred bal-ances. Balance transfers subject to the initial special rate are referred to as special rate balance transfers; balance transfers for which the initial special rate has expired are referred to as purchase rate balance transfers.

Each offer will contain an expiration date. If you attempt to transfer balances by means of a check after the expiration date, we will treat the transaction as a cash advance. We will not make balance transfers attempted by means of a coupon after the expiration date.

PERIODIC FINANCE CHARGES. Except as explained below, Periodic Finance Charges are imposed on purchases, cash advances and balance transfers from the date the transaction occurs to the date of repayment. If the transaction is posted to your Account after the close of the billing period in which it occurs, we will treat the transaction as having occurred on the first day of the bill-ing period in which it is posted to your Account. We will assess Periodic Finance Charges as follows:

(1) Current Billing Period

Periodic Finance Charges are imposed for the current billing period on pur-chases, cash advances and balance transfers unless you paid, by the Pay-ment Due Date, the New Balance shown on your previous billing statement. We compute Periodic Finance Charges each day by multiplying your daily balances of purchases, cash advances and bal-ance transfers by the applicable Daily Periodic Rates. Only special rate bal-ance transfers are included in the daily balance of balance transfers; purchase rate balance transfers are included in the

**DISCOVER** FINANCIAL SERVICES CARD

daily balance of purchases. At the end of the billing period, we add up the results of these daily calculations to determine your Periodic Finance Charges for the billing period.

For purchases, the daily balance is cal-culated on each day by first adding the following to the previous day's daily balance: purchases made that day, fees charged that day (with the exception of Transaction-Fee Finance Charges) and Periodic Finance Charges charged on the previous day's daily balance and by then subtracting any credits and payments that are applied against the balance of purchases and purchase rate balance transfers on that day. On the first day of the billing period we also add to the balance those balance transfers that become purchase rate balance transfers on that day.

For cash advances, the daily balance is calculated on each day by first adding the following to the previous day's daily balance: cash advances made that day, Transaction Fee Finance Charges for cash advances made that day, and Peri-odic Finance Charges charged on the previous day's daily balance and by then subtracting any credits and payments that are applied against the balance of cash advances on that day.

For balance transfers, the daily balance is calculated on each day by first adding the following to the previous day's daily bal-ance: balance transfers made that day and Periodic Finance Charges charged on the previous day's daily balance; and by then subtracting any credits and payments that are applied against the balance of balance

transfers on that day. On the first day of the current billing period we also subtract from the current billing period we also subtract from those balance transfers that become purchase rate balance trans-fers on that day.

(2) Previous Billing Period

Periodic Finance Charges are imposed for the previous billing period on pre-vious billing period purchases, cash advances and balance transfers unless Periodic Finance Charges were already imposed for that billing period, or you paid the New Balance shown on your previous billing statement by the Payment Due Date. To compute these charges, we use the same method of calculation that we use in calculating the Periodic Finance Charges for the current billing period, as described above, except that the applicable Daily Periodic Rates are applied to daily balances of purchases, cash advances and balance transfers for each day of the previous billing period. These daily balances are also computed as described above, with the "previous day's daily balance" considered to have been zero on the first day of the billing period.

(3) Daily Periodic Rates and Annual Percent-age Rates

The Daily Periodic Rates applicable to purchases and cash advances for the current billing period and the previous billing period are based on the Annual Percentage Rate in effect for each billing period as determined below. The Daily Periodic Rates for each billing period are 1/365th of the Annual Percentage Rates in effect for the billing period. The Annual

**EXHIBIT D**

**EXHIBIT R**

Percentage Rate for purchases may be changed based on changes in the rate level for which you qualify, as explained below.

The Annual Percentage Rates are determined in part by the Prime Rate. For purposes of this Agreement, the Prime Rate is the highest rate of interest listed as the "prime rate" in the money rates section of The Wall Street Journal on the last business day of the month. When the Prime Rate changes, the Annual Percentage Rates will change beginning on the first day of the first billing period which begins in the calendar month following the change in the Prime Rate. Increases in the Prime Rate may cause the Daily Periodic Rates, Periodic Finance Charges and Minimum Payment Due each month to increase. The Prime Rate is merely a pricing index and does not represent the lowest or best interest rate available to a borrower at any particular bank at any given time.

(4) Annual Percentage Rate for Purchases

We may have offered you an introductory rate on purchases. The introductory rate is the fixed Annual Percentage Rate that will apply to purchases for the time period specified in the offer. After expiration of this time period, the Annual Percentage Rate for purchases will be as described below.

The two Annual Percentage Rates that generally apply to purchases are the Best Rate and the Standard Rate. The rate level for which you qualify is based on the total amount of purchases that you make during an annual period, as explained below. Purchases which compose this annual total are sometimes referred to as qualified purchases. We make certain appropriate adjustments to qualified purchases in respect of account activity (e.g., a credit issued for a returned purchase).

You will qualify for and receive the Best Rate until your first Anniversary Date subject to Subsection (6) below. We refer to the date that is the last day of the twelfth billing period after your Account was opened, and each anniversary of that date, as your Anniversary Date. On each Anniversary Date subject to Subsection (6) below, we will determine your rate level based on total qualified purchases for the preceding 12 billing periods. You will qualify for the Standard Rate if total qualified purchases are less than $1000.00, and the Best Rate if total qualified purchases are $1000.00 or more. The new rate level will apply to purchases (including the outstanding purchase balance) beginning on the next day and through your next Anniversary Date, subject to Subsection (6) below.

The Best Rate is an ANNUAL PERCENTAGE RATE of Prime Rate plus 8.9 percentage points, with a minimum 12.9%. The Standard Rate is an ANNUAL PERCENTAGE RATE of the Prime Rate plus 8.9 percentage points, with a minimum 19.8%. The Daily Periodic Rates and corresponding Annual Percentage Rates in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

(5) Annual Percentage Rate for Cash Advances

The ANNUAL PERCENTAGE RATE for cash advances, subject to Subsection (6) below, is the Prime Rate plus 8.9 percentage points, with a minimum of 19.8%. The Daily Periodic Rate and corresponding Annual Percentage Rate in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

(6) Rate Disqualification

If as of the end of any billing period, including a billing period ending on an Anniversary Date, you have failed to make the Minimum Payment Due by the Payment Due Date in that billing period and you failed to make the Minimum Payment Due by the Payment Due Date in the preceding billing period, you will be disqualified for the rates described in Subsections (4) and (5) above. If this occurs, your ANNUAL PERCENTAGE RATE for purchases and cash advances will change to the Prime Rate plus 13.9 percentage points, with a minimum of 19.8%. This rate level will apply to your Account (including outstanding balances) beginning on the next day and through your next Anniversary Date. However, if at the time you are subject to an introductory rate or a special rate balance transfer rate, the rate on the balances subject to the introductory rate or the special rate balance transfer rate will not change until the expiration of the introductory or special rate balance transfer rate period.

The Daily Periodic Rate and corresponding Annual Percentage Rate in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

(7) Annual Percentage Rate for Balance Transfers

The Daily Periodic Rate and corresponding Annual Percentage Rate in effect for special rate balance transfers will be set forth in the offer from us under which you make the balance transfer. As indicated in the Balance Transfers Section above, purchase rate balance transfers will be subject to the Daily Periodic Rate and corresponding Annual Percentage Rate that apply to purchases. If your received an offer prior to your receipt of this Agreement, the Daily Periodic Rates and Annual Percentage Rates in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

TRANSACTION FEE FINANCE CHARGES. We will charge you a Transaction Fee Finance Charge of 2.5% of the amount of each new cash advance. There is a minimum Transaction Fee FINANCE CHARGE of $2.00 and no maximum Transaction Fee FINANCE CHARGE. The imposition of Transaction Fee Finance Charges may result in an Annual Percentage Rate for cash advances that is higher than the nominal Annual Percentage Rate. All forms of cash advances, including the use of Discover Card checks regardless of the purpose for which used, are subject to Transaction Fee Finance Charges. To obtain the total Finance Charge on cash advances for each billing period, we add any Transaction Fee Finance Charge for the billing period charged under this section to any Periodic Finance Charge

EXHIBIT

]

**DISCOVER FINANCIAL SERVICES CARD**

to the Cardmember, if living, otherwise:

to the spouse of the Cardmember, if living, otherwise:

equally to the then living lawful children of the Cardmember including stepchildren and adopted children, if any, otherwise:

1. equally to the Cardmember's parents or parent then living, otherwise;

2. to the estate of the Cardmember.

CHANGE OF BENEFICIARY: The Cardmember may change the beneficiary at any time by writing to Allstate. Once the change is recorded by Allstate it will take effect as of the day the request was signed, subject to any claim payment made before such recording. The consent of the beneficiary is not needed for the change.

HOW TO REPORT A CLAIM: Written notice of claim must be given to Allstate at its Home Office within six months after the occurrence of any loss covered by the Policy, or as soon as reasonably possible.

Notice given by or on behalf of the claimant or the beneficiary with information sufficient to identify the Insured Person shall be deemed notice.

PROOF OF LOSS: Written proof of loss must be furnished to Allstate within nine months after the date of loss. If this is not reasonably possible, Allstate may not deny the claim if the proof is furnished as soon as reasonably possible, but not later than one year from the time required, unless the claimant was legally incapable of doing so.

PAYMENT OF CLAIM: Benefits payable for loss under the policy will be paid immediately upon receipt of due written proof of loss. If any benefit under this policy is payable to an Insured Person's estate or to a person who is a minor or is otherwise not competent to give a valid release, Allstate may pay part of the benefit (up to $1,000) to any blood relative of the Insured Person.

Any payment made in good faith shall fully discharge Allstate to the extent of such payment.

LEGAL ACTION: Suit for benefits under the policy cannot be brought sooner than 60 days after Allstate received written proof of loss as required, and no such action may be initiated after three years from the time written proof of loss is required.

CONFORMITY WITH STATE LAWS: Any provision of the policy which, on its effective date, is in conflict with any law to which it is subject, is amended to conform to the minimum requirements of such law.

AUTOPSY: Allstate at its own expense shall have the right and opportunity to make a autopsy where it is not forbidden by law.

ALLSTATE LIFE INSURANCE COMPAN

Louis G. Lower,
President

Michael P. Duncan,
Secretary

---

**DISCOVER FINANCIAL SERVICES CARD**

## Your Billing Rights
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper at the address listed on your bill for Notice of Billing Errors. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
• your name and account number.
• the dollar amount of the suspected error.
• describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

2. **Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges re-lated to any questioned amount. If we didn't make a mistake, you may have to pay the finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

3. **Special Rule For Credit Card Purchases**

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the goods or services. There are two limitations on this right:
(a) you must have made the purchase in your home state, or if not within your home state, within 100 miles of your current mailing address; and
(b) the purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the goods or services.

68 REV. 10/3

DISCOVER FINANCIAL SERVICES CARD

calculated under the Periodic Finance Charges section above.

**MINIMUM PERIODIC FINANCE CHARGE.** We will charge you a minimum Periodic FINANCE CHARGE of $.50 for any billing period in which some Periodic FINANCE CHARGE of less than $.50 would otherwise be imposed.

**RETURNED CHECK FEE.** We will charge you a Returned Check Fee of $15.00 each time you pay us with a check that is returned unpaid. This fee will also apply if a debit transaction to a deposit account from which you have authorized us in writing to periodically deduct all or a part of an amount you owe us under this Agreement is returned unpaid.

**LATE FEE.** We will charge you a Late Fee of $20.00 each time that, as of the 10th day following a Payment Due Date, you have failed to make a required payment.

**RESEARCH FEE.** We may charge you a Research Fee of $5.00 for each copy of a billing statement or sales slip that you request. However, we will not charge a fee if you request copies in connection with a billing error.

**OVERLIMIT FEE.** We will charge you an Overlimit Fee of $20.00 each time that, as of the close of a billing period, you have exceeded your credit limit. This fee may be charged even if the transaction which causes you to exceed your credit limit is authorized by us or if you exceed your credit limit due to the posting of finance charges or fees to your Account.

**DEFAULT-ACCELERATION-COLLECTION COSTS.** You are in default if you become insolvent, if you file a bankruptcy petition or have one filed against you, if we have any other party without your prior written permission or legal process. However, if you are in default, you violate the terms of this Agreement or you file a bankruptcy petition or have one filed against you, we may cease information about your Account to third parties who may assist us in enforcing or rights under this Agreement. We may so include your name and address and her identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to or record telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers without notice to you. We may use automated telephone equipment to make prerecorded telephone calls to contact you about your Account.

**CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction. We will not be liable to you if any of these events happen.

**CHANGE OF TERMS.** We may change any term or part of this Agreement, including any finance charge rate, fee or method of computing any balance upon which the finance charge rate is assessed, by sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, if you have agreed to the changes in the notice, Use of your Account after the effective date of the change will be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

**CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

**ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

**GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

**CANCELLATION.** You may cancel your Account by notifying us in writing or by telephone and returning or destroying every Card and unused check that we have provided you. Of course, you will still be responsible to pay any amount you owe according to the terms of this Agreement. If your Account is a joint Account, each of you may cancel your Account. We may cancel or suspend your Account at any time without notice. We may choose not to issue a new your Account (beyond the expiration date shown on the face of a Card) without notice.

**PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report your credit history to credit reporting agencies and other creditors the status and payment history of your Account including negative credit information. We normally report to such credit reporting agencies each month. We will

DISCOVER CARD

Greenwood Trust Company

_[signature]_

Vice President

**EXHIBIT R**

# APPENDIX 4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| ELITE RECOVERY SERVICES S/I/I TO DISCOVER | ) Case No. |
| | ) Contract |
| | ) 08 M1 127699 |
| Plaintiff, | ) |
| vs. | ) Amount Claimed $7,307.24 |
| | ) Plus attorney fees and costs |
| DONNA A SCHAEFER | ) |
| | ) Return Date: MAY 0 8 2008 |
| Defendant(s) | ) |

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), DONNA A SCHAEFER , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) DONNA A SCHAEFER   , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), DONNA A SCHAEFER   , DISCOVER , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $7,307.24, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER, prays judgment be entered in its favor and against the Defendant(s), DONNA A SCHAEFER   , in the amount of $7,307.24, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY:_____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
218568

# **AFFIDAVIT**

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover transmitted certain electronic data pertaining to the particulars of the indebtedness of SCHAEFER, DONNA A. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of SCHAEFER, DONNA A (SSN# XXX-XX- 7209) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover, the original creditor of the indebtedness of SCHAEFER, DONNA A set forth above, pursuant to a valid purchase agreement.

7. I affirm that SCHAEFER, DONNA A is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of SCHAEFER, DONNA A.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this /5 day of October, 2007.

_____
Notary Public

My Commission Expires:

    Ref#: 854026

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 11



PLAINTIFF'S
EXHIBIT

```
=================================================================
                    Statement of Account
=================================================================
Original Creditor: Discover
=================================================================
Collections Department: 800-780-6165

Mail Payments to:        ERS
                         PO BOX 3474
                         Buffalo, NY 14240-3474


=================================================================

    ERS Account Number:          854026
    Current Statement date:      10/10/2007
    Original Account Number:     6011007515528460
    Placement Balance:           $6742.33
    Interest:                    $564.91

    TOTAL AMOUNT DUE:            $7,307.24


=================================================================

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.


=================================================================
        ******Total Amount Due: $7,307.24
=================================================================
```

SCHAEFER, DONNA A
209 DUBLIN LN
SCHAUMBURG, IL 60194-6122


Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474


PLAINTIFF'S EXHIBIT

# APPENDIX 5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| ELITE RECOVERY SERVICES S/I/I ) | Case No. |
| DISCOVER CARD ) | Contract **08M1  127696** |
| ) | |
| Plaintiff, ) | |
| vs. ) | Amount Claimed $2,051.62 |
| ) | Plus attorney fees and costs |
| RONALD W PAPANEK ) | |
| ) | Return Date: **MAY 0 8 2008** |
| Defendant(s) ) | |

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), RONALD W PAPANEK   , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) RONALD W PAPANEK   , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), RONALD W PAPANEK   , DISCOVER CARD , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $2,051.62, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, prays judgment be entered in its favor and against the Defendant(s), RONALD W PAPANEK   , in the amount of $2,051.62, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY:_____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
218610

## **AFFIDAVIT**

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover Card transmitted certain electronic data pertaining to the particulars of the indebtedness of PAPANEK, RONALD W. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of PAPANEK, RONALD W (SSN# XXX-XX- 2428) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover Card, the original creditor of the indebtedness of PAPANEK, RONALD W set forth above, pursuant to a valid purchase agreement.

7. I affirm that PAPANEK, RONALD W is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of PAPANEK, RONALD W.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this //7 day of January, 2008.

_____
Notary Public

My Commission Expires:

Ref#: 554965

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 //

218610

====================================================================
Statement of Account    06-7511
====================================================================
**Original Creditor: Discover Card**
====================================================================
Collections Department: 800-780-6165

Mail Payments to:          ERS
                           PO BOX 3474
                           Buffalo, NY 14240-3474


====================================================================
ERS Account Number:           554965
Current Statement date:       1/15/2008
Original Account Number:      6011007820175254
Placement Balance:            $1,835.62
Interest:                     $216

TOTAL AMOUNT DUE:          | $2,051.62 |

====================================================================
THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.


====================================================================
         ******Total Amount Due: **$2,051.62**
====================================================================

PAPANEK, RONALD W
4850 S TRIPP AVE
554965
CHICAGO, IL 60632



Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474

# APPENDIX 6

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

ECOVERY SERVICES S/I/I TO          )  Case No.
ER - SECONDS                       )  Contract
                                   )           08M1   127690
    Plaintiff,                     )
                                   )
                                   )
                                   )  Amount Claimed $2,023.72
AYNE                               )  Plus attorney fees and costs
                                   )
    Defendant(s)                   )  Return Date:    MAY 0 8 2008
                                   )

## VERIFIED COMPLAINT AT LAW

/ COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER - SECONDS, by and
torneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), ANDRE
leges and states as follows:

intiff acquired by purchase assignment from the original credit issuer or its successor the account of
ANDRE LAYNE    , and is now the bona fide holder of this claim.

n information and belief from the representations of the assignor, at the specific instance and request of
s), ANDRE LAYNE    , DISCOVER - SECONDS    , directly or through a retail merchant , issued to
certain credit card/revolving charge (open end consumer credit) account.

n information and belief Defendant(s) made various charges to said account since the date of issuance
nting for payments made, there remains an unpaid and past due balance in the sum of $2,023.72, as set
hed affidavit.

und for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to
ng balance.

iff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

FORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER - SECONDS, prays
ed in its favor and against the Defendant(s), ANDRE LAYNE    , in the amount of $2,023.72, plus
y fees and costs.

                    ADLER & ASSOCIATES, LTD.

                    BY:_____
                              For the Firm

.TD., #00512
IFF

York

*218583*

*06-7472*

```
============================================================
                    Statement of Account
============================================================
Original Creditor: Discover - Seconds
============================================================
Collections Department: 800-780-6165

Mail Payments to:        ERS
                         PO BOX 3474
                         Buffalo, NY 14240-3474


============================================================


ERS Account Number:          361083
Current Statement date:      1/15/2008
Original Account Number:     6011007790669112
Placement Balance:           $1,779.07
Interest:                    $244.65

TOTAL AMOUNT DUE:            $2,023.72

============================================================

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.


============================================================
         ******Total Amount Due: $2,023.72
============================================================
```

```
LAYNE, ANDRE
9801 S BELL AVE
361083
CHICAGO, IL 606431734
```

RECEIVED
JAN 24 2008
UNDERWOOD LAW FIRM

```
Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474
```

# APPENDIX 7

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD | ) Case No. |
| | ) Contract |
| | ) |
| | ) **08 M1    127685** |
| Plaintiff, | ) |
| | ) |
| vs. | ) Amount Claimed $1,770.63 |
| | ) Plus attorney fees and costs |
| SONIA N HICKS | ) |
| | ) Return Date: |
| Defendant(s) | ) **MAY 0 8 2008** |

### VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), SONIA N HICKS   , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) SONIA N HICKS   , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), SONIA N HICKS   , DISCOVER CARD   , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $1,770.63, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, prays judgment be entered in its favor and against the Defendant(s), SONIA N HICKS   , in the amount of $1,770.63, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY: _____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
218573

# **AFFIDAVIT**

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover Card transmitted certain electronic data pertaining to the particulars of the indebtedness of HICKS, SONIA N. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of HICKS, SONIA N (SSN# XXX-XX- 4516) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover Card, the original creditor of the indebtedness of HICKS, SONIA N set forth above, pursuant to a valid purchase agreement.

7. I affirm that HICKS, SONIA N is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of HICKS, SONIA N.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this 17 day of October, 2007.

_____
Notary Public

My Commission Expires:

Ref#: 409859

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 11

```
=================================================================
                      Statement of Account
=================================================================
Original Creditor: Discover Card
=================================================================
Collections Department: 800-780-6165

Mail Payments to:       ERS
                        PO BOX 3474
                        Buffalo, NY 14240-3474


=================================================================

ERS Account Number:              409859
Current Statement date:          10/10/2007
Original Account Number:         6011007270246225
Placement Balance:               $1583.24
Interest:                        $187.39

TOTAL AMOUNT DUE:                $1,770.63


=================================================================

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.


=================================================================
        ******Total Amount Due: $1,770.63
=================================================================


HICKS, SONIA N
11859 S STATE ST
CHICAGO, IL 606286133


Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474
```

# APPENDIX 8

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

ELITE RECOVERY SERVICES S/I/I TO      ) Case No.
DISCOVER CARD                          ) Contract
                                       )
                                       )        08M1   127232
         Plaintiff,                    )
                                       )
vs.                                    ) Amount Claimed $1,915.03
                                       ) Plus attorney fees and costs
LATICIA AUDREY BROWN                   )
                                       ) Return Date:   MAY 0 8 2008
         Defendant(s)                  )

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), LATICIA AUDREY BROWN   , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) LATICIA AUDREY BROWN   , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), LATICIA AUDREY BROWN   , DISCOVER CARD , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $1,915.03, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, prays judgment be entered in its favor and against the Defendant(s), LATICIA AUDREY BROWN   , in the amount of $1,915.03, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY:_____
         For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
218574

## **AFFIDAVIT**

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover Card transmitted certain electronic data pertaining to the particulars of the indebtedness of BROWN, LATICIA AUDREY. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of BROWN, LATICIA AUDREY (SSN# XXX-XX- 9367) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover Card, the original creditor of the indebtedness of BROWN, LATICIA AUDREY set forth above, pursuant to a valid purchase agreement.

7. I affirm that BROWN, LATICIA AUDREY is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of BROWN, LATICIA AUDREY.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this ___ day of January, 2008.

_____
Notary Public

My Commission Expires:

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 __11__

Ref#: 409550

218574

```
==============================================================
                  Statement of Account         06-7491
==============================================================
Original Creditor: Discover Card
==============================================================
Collections Department: 800-780-6165

Mail Payments to:        ERS
                         PO BOX 3474
                         Buffalo, NY 14240-3474


==============================================================


ERS Account Number:          409550
Current Statement date:      1/15/2008
Original Account Number:     6011007840227911
Placement Balance:           $1,696.75
Interest:                    $218.28

TOTAL AMOUNT DUE:          ┌─────────────────────────┐
                          │ $1,915.03               │
                          └─────────────────────────┘

==============================================================

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.


==============================================================
         ******Total Amount Due: $1,915.03
==============================================================
```

```
┌──────────────────────────────────┐
│ BROWN, LATICIA AUDREY             │
│ 7514 S WINCHESTER AVE             │
│ 409550                            │
│ CHICAGO, IL 60620-5220            │
└──────────────────────────────────┘
```



```
┌──────────────────────────────────┐
│ Elite Recovery Services Inc.      │
│ PO BOX 3474                       │
│ Buffalo, NY 14240-3474            │
└──────────────────────────────────┘
```

RECEIVED JAN 2 4 2008 UNDERWOOD LAW FIRM

# APPENDIX 9

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| ELITE RECOVERY SERVICES<br>S/I/I TO DISCOVER CARD | ) Case No.<br>) Contract |
| | ) |
| Plaintiff, | ) |
| | ) Amount Claimed $1,931.69 |
| vs. | ) Plus attorney fees and costs |
| | ) |
| HUYI MI | ) |
| | ) Return Date:  MAY 2 2 2008 |
| Defendant(s) | ) |

### VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), HUYI MI , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) HUYI MI , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), HUYI MI , DISCOVER CARD , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $1,931.69, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO DISCOVER CARD, prays judgment be entered in its favor and against the Defendant(s), HUYI MI , in the amount of $1,931.69, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY: _____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL  60602
312 726-1814
218704

```
===============================================================
                    Statement of Account
===============================================================
Original Creditor: Discover Card
===============================================================
Collections Department: 800-780-6165


Mail Payments to:        ERS
                         PO BOX 3474
                         Buffalo, NY 14240-3474


===============================================================

    ERS Account Number:             410099
    Current Statement date:         10/10/2007
    Original Account Number:        6011007330225292
    Placement Balance:              $1727.26
    Interest:                       $204.43

    TOTAL AMOUNT DUE:               $1,931.69


===============================================================

    THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
    COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT
    PURPOSE.


===============================================================
          ******Total Amount Due: $1,931.69
===============================================================
```

MI, HUYI
3700 N MONTICELLO AVE
CHICAGO, IL 606184118


Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474

PLAINTIFF'S
EXHIBIT

# AFFIDAVIT

**STATE OF NEW YORK}**

**COUNTY OF ERIE}**

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Discover Card transmitted certain electronic data pertaining to the particulars of the indebtedness of MI, HUYI. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of MI, HUYI (SSN# XXX-XX- 5762) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Discover Card, the original creditor of the indebtedness of MI, HUYI set forth above, pursuant to a valid purchase agreement.

7. I affirm that MI, HUYI is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of MI, HUYI.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this 15 day of October, 2007.

_____
Notary Public

My Commission Expires:

Ref#: 410099

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 11

**PLAINTIFF'S EXHIBIT**

# DISCOVER
FINANCIAL SERVICES GROUP

## CASHBACK BONUS℠
### TERMS AND CONDITIONS

The Cashback Bonus Terms and Conditions are not a part of the Cardmember Agreement.

Cashback Bonus℠ is an amount denominated in dollars and cents which may be earned by Discover Card Cardmembers by using their Discover Card for purchases. Cashback Bonus is not earned for cash advances or balance transfers. Cashback Bonus is subject to these terms and conditions and is subject to change without notice. Cashback Bonus is subject to disqualification prior to being awarded in the circumstances described below.

Cashback Bonus is calculated based on an annual period corresponding to the Cardmember's first anniversary year. The first anniversary year begins on the date the Card is issued and ends on the last day of the twelfth monthly billing period which follows. Each successive anniversary year is the aggregate one-year period comprised of the next twelve monthly billing periods.

The amount of Cashback Bonus is calculated by multiplying each purchase by:

1. .25% (.0025), if the purchase is part of the first $1,000 in purchases during the anniversary year.

2. .50% (.0050), if the purchase is part of the second $1,000 in purchases during the anniversary year.

3. .75% (.0075), if the purchase is part of the purchases during the anniversary year.

4. 1.0% (.01), if the purchase is part of the purchases in excess of $3,000 during the anniversary year.

The total of such calculations for each anniversary year is the amount of Cashback Bonus which will be awarded as described below. The calculation begins again with the beginning of each anniversary year. The Cardmember's monthly billing statement will show the amount of Cashback Bonus and total purchases through the date of its statement for each anniversary year.

Cashback Bonus is awarded shortly after each anniversary year. The exact method of award may change from year to year, but the Cardmember

will have the opportunity to receive the Cashback Bonus in cash equivalent (i.e., check or credit to the Cardmember's Discover Card Account). As part of the award method, the Cardmember may have the opportunity to make an election or to exercise a choice as to the manner in which the Cashback Bonus is awarded or the award redeemed. The failure to make such election or choice at a timely basis may result in the exercise of default options or in the disqualification of the Cashback Bonus award. It is the Cardmember's responsibility to notify Discover Card in the event a Cashback Bonus award is not received for any reason.

Cardmembers have no right to accrued but unawarded Cashback Bonus amounts; if an account is closed for any reason prior to the anniversary date, any accrued Cashback Bonus will be forfeited.

5. Presently, Cashback Bonus is awarded by means of (i) a credit to Account, if the amount is less than $2.00, and (ii) a check mailed to the Cardmember (by either first class or third class mail), if the amount is $2.00 or greater.

6. Cashback Bonus is awarded to Cardmembers in good standing at the time of the award. Cardmembers who are delinquent at the time of the award may, at the option of Discover Card, have their Cashback Bonus applied automatically as a credit to their Account.

7. In the event a Card is lost or stolen, the amount of Cashback Bonus is the amount of qualifying purchases and the anniversary date from the old Account are transferred to the new Account.

Discover Card reserves the right to make appropriate adjustments to Cashback Bonus amounts in respect of Account activity (e.g., a credit to an Account in respect of a prior purchase will issue in a reduction of Cashback Bonus).

C880REY 95

**EXHIBIT**

# DISCOVER
FINANCIAL SERVICES GROUP

## ALLSTATE LIFE INSURANCE COMPANY
Home Office - Northbrook, Illinois

### CERTIFICATE OF INSURANCE

[All]state Life Insurance Company (herein called "Allstate") has issued Master Policy No. 1401363 to Greenwood Trust Company (herein called "Policyholder") which provides Travel Accidental Death Insurance for Cardmembers of the Policyholder and their eligible family members.

### FLIGHT ACCIDENTAL DEATH INSURANCE

Allstate will pay the applicable Accidental Death benefit amounts for injury sustained by an Insured Person while occupying an aircraft as a farepaying passenger when fare is charged in advance, and not as a pilot or crew member. The aircraft must be provided and operated by a duly licensed common carrier for regular passenger service.

### BENEFIT AMOUNT

Accidental Death Benefit when Insured Person's full air fare is charged in advance to the Discover Card Account: $500,000.

### DEFINITIONS

"Insured Person" means a Discover Cardmember in good standing, and the following dependents of the Cardmember: the spouse of the Cardmember if a resident of the same household; and each unmarried child, including stepchildren and adopted children, not more than 19 years of age (23 if a full-time student), who is dependent upon the Cardmember for support and maintenance. In no event will the same person qualify as an Insured Person under more than one Discover Card. Coverage for any handicapped child will not terminate solely by reaching the limiting age. Coverage will continue if the child is and continues to be both (1) incapable of self-sustaining employment because of mental retardation or physical handicap and (2) chiefly dependent upon the Cardmember for support and maintenance.

"Injury or Injured" means bodily injury caused by an accident occurring while the insurance is in force for the Insured Person and which injury results, within 365 days of the accident, directly and independently of all other causes, in death.

### EXCLUSIONS

Accidental Death Benefits are not payable for deaths caused by:

1. suicide while sane or insane; or
2. declared or undeclared war or any act thereof.

### TERMINATION OF COVERAGE

The insurance on each Insured Person will automatically terminate at 12:01 a.m. on the date that they no longer fulfill the requirement of an Insured Person as defined, or upon termination of the Master Policy. Termination shall be without prejudice to any claim originating prior to the effective date of termination.

### GENERAL PROVISIONS

BENEFICIARY: Unless otherwise specified by the Cardmember, any sum due under the policy for loss of life of an Insured Person will be paid

"Occupying" means riding in or upon or entering into or alighting from.

INIMUM MONTHLY PAYMENT. The Minimum Payment Due each month will be the greater of $10.00 or an amount equal to 1/36th of the New Balance, rounded to the next higher whole dollar amount. However, if the New Balance is less than $10, the minimum monthly payment will be the amount of the New Balance. You can pay ahead. The Minimum Payment Due for each monthly billing period will be reduced by the amount you have paid in excess of the Minimum Payment Due in any of the three previous monthly billing periods, less any portion of the excess already used to reduce payments. However, here will be no reduction if you have exceeded your credit limit; or you have paid the entire New Balance shown on your billing statement. There will also be no reduction if your Account is not current, has not generally been paid in an acceptable manner or is otherwise not in good standing.

CREDIT BALANCES. We will refund any credit balance within seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00, which remain in your Account after two billing periods.

BALANCE TRANSFERS. We may periodically offer you the opportunity to transfer balances from other credit card accounts to your Account. Each offer will contain an initial special rate, which will be the Annual Percentage Rate that will apply to transferred balances for the time period specified in the offer. After the expiration of this time period, the Annual Percentage Rate that applies

for purchases will apply to transferred balances. Balance transfers subject to the initial special rate are referred to as special rate balance transfers; balance transfers for which the initial special rate has expired are referred to as purchase rate balance transfers.

Each offer will contain an expiration date. If you attempt to transfer balances by means of a check after the expiration date, we will treat the transaction as a cash advance. We will not make balance transfers attempted by means of a coupon after the expiration date.

PERIODIC FINANCE CHARGES. Except as explained below, Periodic Finance Charges are imposed on purchases, cash advances and balance transfers from the date the transaction occurs to the date of repayment. If the transaction is posted to your Account after the close of the billing period in which it occurs, we will treat the transaction as having occurred on the first day of the billing period in which it is posted to your Account. We will assess Periodic Finance Charges as follows:

(1) Current Billing Period

Periodic Finance Charges are imposed for the current billing period on purchases, cash advances and balance transfers unless you paid, by the Payment Due Date, the New Balance shown on your previous billing statement. We compute Periodic Finance Charges each day by multiplying your daily balances of purchases, cash advances and balance transfers by the applicable Daily Periodic Rates. Only special rate balance transfers are included in the daily balance of balance transfers; purchase rate balance transfers are included in the

daily balance of purchases. At the end of the billing period, we add up the results of these daily calculations to determine your Periodic Finance Charges for the billing period.

For purchases, the daily balance is calculated on each day by first adding the following to the previous day's daily balance: purchases made that day, fees charged that day (with the exception of Transaction Fee Finance Charges) and Periodic Finance Charges charged on the previous day's daily balance; and by then subtracting any credits and payments imposed for that billing period, or you paid the New Balance shown on your Due Date. To compute these charges, we use the same method of calculation of the billing period we also add to the balance those balance transfers that become purchase rate balance transfers on that day.

For cash advances, the daily balance is calculated on each day by first adding the following to the previous day's daily balance: cash advances made that day, Transaction Fee Finance Charges for cash advances made that day, and Periodic Finance Charges charged on the previous day's daily balance; and by then subtracting any credits and payments that are applied against the balance of cash advances on that day.

For balance transfers, the daily balance is calculated on each day by first adding the following to the previous day's daily balance: balance transfers made that day and Periodic Finance Charges charged on the previous day's daily balance; and by then subtracting any credits and payments that are applied against the balance of balance

transfers on that day. On the first day of the current billing period we also subtract from the balance those balance transfers that become purchase rate balance transfers on that day.

(2) Previous Billing Period

Periodic Finance Charges are imposed for the previous billing period on previous billing period purchases, cash advances and balance transfers unless Periodic Finance Charges were already imposed for that billing period, or you paid the New Balance shown on your previous billing statement by the Payment Due Date. To compute these charges, we use the same method of calculation that we use in calculating the Periodic Finance Charges for the current billing period, as described above, except that the applicable Daily Periodic Rates are applied to daily balances of purchases, cash advances and balance transfers (or cash advances and balance transfers for which the previous day's daily balance" considered to have been zero on the first day of the billing period.

(3) Daily Periodic Rates and Annual Percentage Rates

The Daily Periodic Rates applicable to purchases and cash advances for the current billing period and the previous billing period are based on the Annual Percentage Rate in effect for each billing period as determined below. The Daily Periodic Rates for each billing period are 1/365th of the Annual Percentage Rates in effect for the billing period. The Annual



EXHIBIT D

Percentage Rate for purchases may be changed based on changes in the rate level for which you qualify, as explained below.

The Annual Percentage Rate for purchases is determined, in part, by the Prime Rate. For purposes of this Agreement, the Prime Rate is the highest rate of interest listed as the "prime rate" in the money rates section of The Wall Street Journal on the last business day of the month. When the Prime Rate changes, the Annual Percentage Rate will change beginning on the first day of the first billing period following the change in the calendar month following the change in the Prime Rate. Increases in the Prime Rate may cause the Daily Periodic Rates, Periodic Finance Charges and Minimum Payment Due each month to increase.

The Prime Rate is merely a pricing index and does not represent the lowest or best interest rate available to a borrower at any particular bank at any given time.

4) Annual Percentage Rate for Purchases

We may have offered you an introductory rate on purchases. The introductory rate is the fixed Annual Percentage Rate that will apply to purchases for the time period specified in the offer. After expiration of this time period, the Annual Percentage Rate for purchases will be as described below.

The two Annual Percentage Rates that generally apply to purchases are the Best Rate and the Standard Rate. The rate level for which you qualify is based on the total amount of purchases that you make during an annual period, as ex-

plained below. Purchases which compose this annual total are sometimes referred to as qualified purchases. We make certain appropriate adjustments to qualified purchases in respect of Account activity (e.g., a credit issued for a returned purchase).

You will qualify for and receive the Best Rate until your first Anniversary Date subject to Subsection (6) below. We refer to the date that is the last day of the twelfth billing period after your Account was opened, and each annual anniversary of that date, as your Anniversary Date. On each Anniversary Date subject to Subsection (6) below, we will determine your rate level based on total qualified purchases for the preceding 12 billing periods. You will qualify for the Best Rate if total qualified purchases for the preceding 12 billing periods are $1000.00 or more. You will qualify for the Standard Rate if total qualified purchases are less than $1000.00, and in the billing period and through your next Anniversary Date, subject to Subsection (6) below.

The Best Rate is an ANNUAL PERCENTAGE RATE of Prime Rate plus 8.9 percentage points, with a minimum of 12.9%. The Standard Rate is an ANNUAL PERCENTAGE RATE of the Prime Rate plus 8.9 percentage points, with a minimum of 19.8%. The Daily Periodic Rates and corresponding Annual Percentage Rates in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

) Annual Percentage Rate for Cash Advances

The ANNUAL PERCENTAGE RATE for cash advances, subject to Subsection (6) below, is the Prime Rate plus 8.9 percentage points, with a minimum of 19.8%. The Daily Periodic Rate and corresponding Annual Percentage Rate in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

(7) Annual Percentage Rate for Balance Transfers

The Daily Periodic Rate and corresponding Annual Percentage Rate in effect for special rate balance transfers will be set at a special rate balance transfer rate that will apply to purchases. If you received an offer prior to your receipt of this Agreement, the Daily Periodic Rates that make the balance transfer. As indicated in the Balance Transfers Section above, purchase rate balance transfers will be subject to the Daily Periodic Rate and corresponding Annual Percentage Rate that apply to purchases. If you receive an offer prior to your receipt of this Agreement, the Daily Periodic Rates and Annual Percentage Rates in effect on the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

) Rate Disqualification

If as of the end of any billing period, including a billing period ending on an Anniversary Date, you have failed to make the Minimum Payment Due by the Payment Due Date in that billing period, and you failed to make the Minimum Payment Due by the Payment Due Date in the preceding billing period, you will be disqualified for the rates described in Subsections (4) and (5) above. If this occurs, your ANNUAL PERCENTAGE RATE for purchases and cash advances will change to the Prime Rate plus 13.9 percentage points, with a minimum of 19.8%. This rate level will apply to your Account (including outstanding balances) beginning on the next day and through your next Anniversary Date. However, if at the time you are subject to an introductory rate or a special rate balance transfer rate, the rate on the balances subject to the introductory rate or the special rate balance transfer rate will not change until the expiration of the introductory or special rate balance transfer rate period.

The Daily Periodic Rate and corresponding Annual Percentage Rate in effect on

the date this Agreement is furnished to you are set forth in the enclosed "Additional Disclosure" or card carrier.

TRANSACTION FEE FINANCE CHARGES. We will charge you a Transaction Fee Finance Charge of 2.5% of the amount of each new cash advance. There is a minimum Transaction Fee FINANCE CHARGE of $2.00 and no maximum Transaction Fee FINANCE CHARGE. The imposition of Transaction Fee Finance Charges may result in an Annual Percentage Rate for cash advances that is higher than the nominal Annual Percentage Rate. All forms of cash advances, including the use of Discover Card checks regardless of the purpose for which used are subject to Transaction Fee Finance Charges. To obtain the total Finance Charge on cash advances for each billing period, we add any Transaction Fee Finance Charge for the billing period charged under this section to any Periodic Finance Charge

EXHIBIT R

EXHIBIT

DISCOVER
FINANCIAL SERVICES CARD

to the Cardmember, if living, otherwise;

equally to the then living lawful children of the Cardmember including stepchildren and adopted children, if any, otherwise;

i. equally to the Cardmember's parents or parent then living, otherwise;

i. to the estate of the Cardmember.

CHANGE OF BENEFICIARY: The Cardmember may change the beneficiary at any time by writing to Allstate. Once the change is recorded by Allstate it will take effect as of the day the request was signed, subject to any claim payment made before such recording. The consent of the beneficiary is not needed for the change.

HOW TO REPORT A CLAIM: Written notice of claim must be given to Allstate at its Home Office within six months after the occurrence of any loss covered by the Policy, or as soon as reasonably possible.

Notice given by or on behalf of the claimant or the beneficiary with information sufficient to identify the insured Person shall be deemed notice.

CLAIM FORMS: Once Allstate receives written notice of a claim, it will send forms for filing proof of loss. If these forms are not sent to the claimant within 15 days after Allstate receives notice, the proof of loss requirements will be met by giving Allstate written proof of the occurrence, and cause of the loss within the time stated in the Proof of Loss Provision.

PROOF OF LOSS: Written proof of loss must be furnished to Allstate within nine months after

the date of loss. If this is not reasonably possible, Allstate may not deny the claim if the proof is furnished as soon as reasonably possible, but not later than one year from the time required, unless the claimant was legally incapable of doing so.

PAYMENT OF CLAIM: Benefits payable for loss under the policy will be paid immediately upon receipt of due written proof of loss. If any benefit under this policy is payable to an Insured Person's estate or to a person who is a minor or is otherwise not competent to give a valid release, Allstate may pay part of the benefit (up to $1,000) to any blood relative or the insured Person.

Any payment made in good faith shall fully discharge Allstate to the extent of such payment.

LEGAL ACTION: Suit for benefits under the policy cannot be brought sooner than 60 days after Allstate received written proof of loss as required, and no such action may be initiated after three years from the time written proof of loss is required.

CONFORMITY WITH STATE LAWS: Any provision of the policy which, on its effective date, is in conflict with any law to which it is subject, is amended to conform to the minimum requirements of such law.

AUTOPSY: Allstate at its own expense shall have the right and opportunity to make a autopsy where it is not forbidden by law.

ALLSTATE LIFE INSURANCE COMPANY

Michael P. Duncan
Secretary

Louis G. Lower,
President

DISCOVER
FINANCIAL SERVICES CARD

## Your Billing Rights
### KEEP THIS NOTICE FOR FUTURE USE

is notice contains important information about your ghts and our responsibilities under the Fair Credit filing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper at the address listed on your bill for Notice of Billing Errors. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• your name and account number.

• the dollar amount of the suspected error.

• describe the error and explain if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any ques-

tioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay the finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the goods or services. There are two limitations on this right:

(a) you must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) the purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the goods or services.

88 REV. 103